CASE 65.—ACTION BY THE AYER & LORD TIE CO. AGAINST
C. P. KEOWN, SHERIFF, TO ENJOIN THE COL-
LECTION OF TAXES ON RAILROAD TIES OWNED
BY A NON-RESIDENT.—April 13.

## Ayer & Lord Tie Co. v. Keown, Sheriff

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From a judgment dismissing the petition plaintiff
appeals.   Affirmed.

1. Taxation—Personal Property—Where Taxable—The personal
property of a resident of the State, whether a corporation or
an individual, is taxable at the owner's place of residence.
2. Same—Non-residents—The personal property of non-residents
is taxable in the county where it is located.
3. Same—Corporations—Foreign    Corporations—Residence—The
fact that a foreign corporation has a place of business and
a chief office in the State does not make it a resident thereof,
or the place where its chief office is its residence in the State,
in the sense that all its personal property in the State is to
be deemed there located for purposes of taxation
4. Same—Property Being Transported out of State—When Taxable
—Commodities intended for shipment out of the State are
taxable within the State until they are actually delivered to
a common carrier for transportation to the State of their
destination, or actually launched on their way to such other
State, and carrying them to the depot of the carrier is no part
of their exportation.
5. Same—Pleadings—Petition—Sufficiency—A petition by a foreign
corporation to enjoin the collection of taxes assessed against
its personal property in the State, on the ground that, being
intended for exportation, such property was exempt from tax-
ation, alleging that the property, consisting of certain railroad
ties, had been taken from the woods and placed in the hands
of a common carrier for immediate shipment out of the
county, and that they were on the date of assessment on their
way to foreign ports, and that as many of them as were on

Ayer & Lord Tie Co. v. Keown, Sheriff.

such date within the limits of the county were there only temporarily on their journey from the woods to foreign States, and were moving to be loaded on barges at the time of taxation, did not state a cause of action, in that it was nowhere alleged that at the time the assessment was made the property had started on its final journey out of the State

6. On Rehearing—Petition—Construction—The allegations of the petition that the ties had been taken from the woods and placed in the hands of a common carrier for the purpose of immediately shipping them out of the county were to be read in connection with other allegations to the effect that the ties were checked only temporarily on their pourney to a foreign State for the purpose of being loaded on barges on which they were to be carried to their destination, and as under such allegations plaintiff might have sold the ties while waiting for barges, or might have changed its plan and shipped them to some point in this State, there was nothing to show that it had lost control of the property, or that it had started finally on its journey out of the State, so as to render it exempt from taxation.

7. Same—A pleading must be construed against the pleader.

8. Evidence—Judicial Notice—Matters of Common Knowledge— In an action to restrain the collection of taxes on railroad ties on the ground that the same were exempt as property intended for exportation from the State, the court would take notice of matters of common knowledge as to how the business of loading such ties on barges for exportation by water was done.

C. C. GRASSHAM and W. R. GARDNER for appellant.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The ties sought to be taxed were not taxable for the reason that same were subject to the rules and regulations of interstate commerce law, controlling the taxation and regulation of articles of commerce. (Sub-sec. 3, sec. 8, art. 1, Constitution of U. S.; Com. v. Hogan, McMorrow & Tieke Co., vol. 25, part 1, Ky. Law Rep., 41; Robbins v. Shelby Co. taxing district, 120 U. S., 488; O'Neal v. Vermont, 140 U. S., 323; Adyson Pipe Co. v. U. S., 157 U. S., 217).

2. Whenever a commodity has begun to move as an article of trade, commerce in the commodity has commenced. The same rule applies when property has been placed with carrier for

immediate shipment.   (The Daniel Ball,' 10 Wall (U. S.), 557-
665; LeLoup v. Port of Mobile, 127 U. S., 640; Coe v. Erroll, 116
U. S., 517). ———(Important).

BARNES & ANDERSON and GLENN & RINGO for appellee.

This case involves the same questions and is on all fours with
the cases of the Ayer & Lord Tie Co. v. Keown, sheriff, decided
by this court October 17th, 1905.   Opinion by Chief Justice
Hobson, reported in 89 S. W., page 116.

The complaint being in this case that the cross-ties were not
subject to taxation in Kentucky, on acocunt of being personal
property of a foreign corporation.   This question was also decided
adversely to the appellant's contention in the case of Johnson
v. Bradley-Watkins Tie Co., reported in 85 S. W., 726, 27 Ky. Law
Rep., 541.   Wherein it was held that such property under section
4020, Ky. Stat. 1903, was taxable here.

In view of these very recent decisions of this court we deem
it unnecessary to burden the court with further citations or argu-
ment and respectfully ask that the judgment of the lower court
be affirmed.

### AUTHORITIES CITED.

Kentucky Stat., sec., 4020; Ayer & Lord Tie Co. v. Keown,
sheriff, etc., 89 S. W., 116; Johnson v. Bradley-Watkins Tie Co.,
85 S. W., 726.

OPINION OF THE COURT BY JOHN D. CARROLL, Com-
missioner—Affirming.

The appellant is a corporation organized under the
laws of the State of Illinois, and its principal place
of business is situated in Chicago, Ill.   It is engaged
in the business of buying, transporting, and selling
railroad ties in different parts of the country.   In
1903 the board of supervisors of Ohio county, Ky.,
assessed omitted personal property against appellant
amounting $12,500, and to enjoin the appellee, the
sheriff of Ohio county, from collecting the tax due on
said assessment, this action was brought.   It is

alleged in the petition as amended that appellant listed and paid taxes on all of the personal property owned by it, including the personal property situated in Ohio county, Ky., in Chicago, Cook county, Ill.; that all of the ties listed by the board of supervisors, and upon which a tax is sought to be collected, "had been completely manufactured into railroad ties in the woods; that nothing remains to be done to them in order to place them in condition for use as railroad ties, as originally designed by plaintiff when they purchased them; that said ties had been taken from·the woods and placed in the hands of a common carrier for the purpose of immediately shipping them out of the county, and were on September 15, 1903, on their way to foreign ports; that as many of them as were on said date within the limits of Ohio county were checked only temporarily on their journey from the woods to foreign States, for the purpose of being loaded on barges, on which they were to be, and on which they have long since, been, carried to their place of destination outside of Ohio county, Ky., towards which points they had already started and were moving at the time of the taxation as above referred to; that as a matter of fact all of said ties at said date had been contracted to foreign companies, persons, and corporations and were in process of delivery." It also averred that it had a branch office and principal place of business at Paducah, in McCracken county, Ky., which is its head office and principal place of business and residence in Kentucky, and at which place it is required by the laws of Kentucky to, and does, list and pay taxes on all of its personal property taxable in the State. To this pleading a demurrer was sustained, and, the

appellant declining to plead further, its petition was dismissed, and it is here on appeal.

In Johnson v. Bradley-Watkins Tie Co., 120 Ky., 136, 85 S. W., 726, 27 Ky. Law Rep., 540, and Ayers & Lord Tie Co. v. Keown, Sheriff, 89 S. W., 116, 28 Ky. Law Rep., 201, it was expressly decided by this court that personal property, situated in this State and owned by a nonresident of the State, is subject to taxation within this State. As appellant has a chief office and place of business in the State at Paducah, in McCracken county, proceeding upon the theory that personal property follows the residence of the owner, it is contended that all its personal property is taxable there, and therefore the taxing authorities of Ohio county, in attempting to list and tax its personal property in that county, were acting out of their powers and jurisdiction. When the owner resides in this State, whether a corporation or an individual, the general rule and the one followed is that his personal property is taxable at the place where he resides. Gates v. Barrett, 79 Ky., 295, 2 Ky. Law Rep., 218; Wren v. Boske, 72 S. W., 279, 24 Ky. Lew Rep., 1780; Langdon-Creasey Co. v. Trustees, 116 Ky., 562, 76 S. W., 381, 25 Ky. Law Rep., 823; Com. v. Union Refrigerator Co., 118 Ky., 131, 80 S. W., 490, 26 Ky. Law Rep., 24. But this rule has no application to the question here raised, which is that the personal property in this State of a foreign corporation must be assessed for taxation at the place in this State where its chief office and place of business is situated. This position is entirely untenable, and is not sustained by any authority that we have discovered. If the principle that all personal property followed the

owner, and could not be taxed except where he resided, was applied to nonresidents, then their personal property in this State would escape taxation entirely. This rule cannot be, and has never been, extended to persons who reside beyond this State. The only fair and safe method of assessing and taxing the personal property of nonresidents is to assess and tax it in the county where it is located. The fact that a foreign corporation may have a place of business and a chief office in this State does not make it a resident of this State, or the place where its chief office is its residence in the State, in the sense that all the personal property of the corporation in this State is to be deemed to be located there for the purposes of taxation. The law requires foreign corporations to have and keep an office and place of business in this State chiefly for the purpose of service of process upon them, and to bring them safely within the jurisdiction of our courts, and to hold that all the personal property of a foreign corporation, scattered throughout the State, must be listed for taxation where its chief office in this State happened for the time being to be located, would not only result in great loss to the State and other taxing districts, but would open wide the door for fraudulent evasions of the revenue law.

The principal question made by appellant in this case is that these ties, at the time they were assessed for taxation, had been placed in the hands of a common carrier for the purpose of shipping them out of the county, and that they were then on their way to foreign ports. In an exhaustive and able discussion of this question in the case of Coe v. Errol, 116 U. S., 517, 6 Sup. Ct., 475, 29 L. Ed., 715, where the

question presented was the right of a State to levy a tax on personal property in process of transportation, the court said: "There must be a point of time when they cease to be governed exclusively by the domestic law, and begin to be governed by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose,. in which they commence their final movement for transportation from the State of their origin to that of their destination. Wh'en the products of the farm or forest are collected and brought in from the surrounding country to a town or station serving as an entrepot for that particualr region, whether on a river or line of railroad, such products are not yet exported, nor are they yet in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of their State to the State of their destination, or have started on an ultimate passage to that State. Until then it is reasonable to regard them as not only in the State of their origin, but as a part of the general mass of property of that State, subject to its jurisdiction and liable to taxation. The point of time when State jurisdiction over the commodities of commerce begins and ends is not an easy matter to designate or define, yet it is highly important both to the shipper and to the State that it should be clearly defined so as to avoid all ambiguity and question. Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity, as between the States, has commenced; but this movement does not begin until the articles have been shipped or started for transportation from one State to the other. The

carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence, is no part of their journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another State, or committed to a carrier for transportation to such State, its destination is not fixed and certain. It may be sold or otherwise disposed of within the State, and never put in course of transportation out of the State. Carrying it from the farm or forest to the depot is only an interior movement of the property, entirely within the State, for the purpose, it is true, but only for the purpose, of putting it in a course of exportation. It is no part of the exportation itself. Until shipped or started on its final journey out of the State, its exportation is a matter altogether in fieri, and not at all a fixed and certain thing.''

We regard the rule laid down in this case as the correct one, and as controlling the question involved in the case at bar; but a careful reading of the petition as amended discloses that it does not state facts that come within the principle announced in this case. It is true that the petition avers that ''the ties had been taken from the woods and placed in the hands of a common carrier for the purpose of immediately shipping them out of the county, and that they were, on said date, on their way to foreign ports; that as many of them as were on said date within the limits of Ohio county were there only temporarily on their journey from the woods to foreign States, for the purpose of being loaded on barges on which they were to be carried to their destination outside of the

corporate limits of the State, towards which points they had already started and were moving at the time of taxation as above referred to." These allegations might be true, and yet all of the ties assessed for taxation be on their way to the depot, or to the place of shipment, or they might be delivered at the place of shipment for the purpose of transportation. Nowhere is it alleged that at the time the assessment was made this property had started on its final journey out of the State. Until the property has started on its final journey outside the State, it is liable to taxation in the county in which it is located. As said in Coe v. Errol, supra, carrying the property to the depot, where the transportation out of the State is to begin, is not sufficient to exempt it from taxation within the State. It must have been actually placed in the custody of a common carrier and started on its final journey out of the State.

We are therefore of the opinion that the petition does not state a cause of action, and that the demurrer to it was properly sustained; and the judgment is affirmed.

Response to petition for rehearing.

HOBSON, Judge.

A pleading must be construed against the pleader. The allegation of the petition that the ties had been taken from the woods and placed in the hands of a common carrier for the purpose of immediately shipping them out of the county must be read in connection with the other allegations of the petition to the effect that the ties were checked only temporarily on their journey to foreign States for the

Ayer & Lord Tie Co. v. Keown, Sheriff.

purpose of being loaded on barges on which they were to be caried to their destination. We must also take notice of matters of common knowledge as to how the business is done. A barge holds a great many ties. So they are hauled from the woods, piled on the bank, and when a barge load is ready a barge is obtained and they are loaded on it. Under the allegations of the petition the ties had been hauled from the woods and had been checked in their journey waiting to be loaded on barges. This brings the case precisely within the following language of the United States Supreme Court quoted in the opinion: "The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence, is no part of their journey. That is all preliminary work. * * * It (the property) may be sold or otherwise disposed of within the State, * * * Until shipped or started on its final journey out of the State, its exportation is a matter altogether in fieri, and not at all a fixed and certain thing."

Under the allegations of the petition appellant might have sold the ties while waiting for the barges to be loaded on, or it might have changed its plan and shipped them to some point in this State. There is nothing to show that appellant had lost control over the property, or that it had started finally on its journey out of the State.

Petition overruled.