## MARSHALL-WELLS COMPANY v. COMMISSIONER OF TAXATION.[1]

August 10, 1945.

Nos. 33,928, 33,929.

[1]Reported in 20 N. W. (2d) 92.

*Gillette, Nye, Harries & Montague* and *Fowler, Youngquist, Furber, Taney & Johnson,* for relator.

*J. A. A. Burnquist,* Attorney General, and *David W. Lewis,* Special Assistant Attorney General, for respondent.

THOMAS GALLAGHER, JUSTICE.

On July 9, 1942, the commissioner of taxation assessed against relator, Marshall-Wells Company, a New Jersey corporation, additional taxes, under the Minnesota income and franchise tax act, amounting to $16,348.42 for the year 1938 and $15,441.91 for the year 1939. The commissioner's orders were subsequently affirmed by the board of tax appeals on August 15, 1944, and are before us now upon writs of *certiorari* issued September 1, 1944.

It is not disputed that relator is subject to the franchise tax specified in Minn. St. 1941, § 290.02 (Mason St. 1940 Supp. § 2394-2), which imposes upon every foreign corporation, for the privilege of transacting or for the actual transaction of business within the state, an annual tax measured by the taxable net income of such corporations, as computed under § 290.17(2), (§ 2394-23[b]), which includes the following provision:

"Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

\* \* \* \* \*

"(2) \* \* \* Income or gains from intangible personal property not employed in the business of the recipient of such income or gains, and from intangible personal property employed in the business of such recipient if such business consists principally of the holding of such property and the collection of the income and gains therefrom, wherever held and whether in trust or otherwise, shall be assigned to this state if the recipient thereof is domiciled within this state; \* \* \*."

The question presented is whether relator, a foreign corporation with a commercial domicile in Minnesota, is required to include in its taxable income, for the measurement of said franchise tax, dividends from corporate stock of subsidiaries conducting business in Canada and connected in no way with relator's Minnesota business; and, if so, whether such requirements offend the due process clause of U. S. Const. Amend. XIV.

Relator was incorporated under the laws of New Jersey in 1901. It was admitted to do business in Minnesota shortly thereafter. Its statutory office is in New Jersey, and the stockholders meetings are held there as required by its laws.

The directors of the corporation are located as follows: Four in Duluth, one in Winnipeg, one in Chicago, and one in Washington, D. C. The meetings of the board of directors are held in Duluth, where the president, secretary, and treasurer live.

Relator conducts a wholesale hardware business and has four branches: One in Duluth, with a subbranch in Minneapolis; one in

Billings, Montana; one in Spokane, Washington; and one in Portland, Oregon, with a subbranch in Seattle, Washington. The business is supervised and directed from Duluth, where the executive office is located. The Duluth office directs and supervises the buying policies, credits, and accounting procedure of the corporation. Payments for purchases are made from Duluth. Proceeds of sales are deposited in banks in the various branch cities and are withdrawn by check from Duluth. Payrolls are checked in Duluth and money for their payment deposited in banks at the location of the branches.

The board of tax appeals found that relator had established a commercial domicile in Minnesota, and such finding is not challenged.

The tax in question does not involve income arising from the hardware business of the corporation. The taxpayer owns all the stock of three Canadian corporations which operate a separate hardware business in the Dominion of Canada. They have a central office in Winnipeg, which supervises and directs the Canadian business. T. L. Waldon is president and general manager of the Canadian corporations and has his office in Winnipeg. Bank credits are arranged for the Canadian corporations with the Dominion Bank of Canada. All details for the operation of the Canadian corporations are centered in the office of the president at Winnipeg, or are handled at other offices of the corporations at Edmonton and Vancouver. All such activities are conducted separately from the business in the United States. All goods handled in Canada are purchased in Canada or in Europe and paid for from the Canadian offices. The majority of the directors of each of the Canadian corporations are Canadians, and directors meetings are held in Canada. The secretary and treasurer of relator corporation are also respectively secretary and treasurer of each of the Canadian corporations, and reside in Duluth.

In 1938, the three Canadian corporations declared dividends totaling $300,000 upon its stock, all of which stock was owned by relator. In 1939, they declared dividends totaling $270,270.27.

Drafts for the payment of such dividends were deposited by relator in Duluth, and thereafter such funds were intermingled with its general funds, no attempt being made to keep track of their subsequent distribution.

The board of tax appeals found that the stocks of the three Canadian corporations were not employed in relator's Minnesota business; and that such business did not consist in holding such stock and collecting the income therefrom; but that, nevertheless, by virtue of relator's *commercial domicile* here, the entire income from the Canadian stocks should be included in the measurement of the franchise tax.

 Generally speaking, a state may tax any privilege extended by it and may adopt any reasonable rule for the measurement of such tax, *provided it is not measured by property, or income from property, not within its jurisdiction and not used in connection with or correlated to any business authorized or conducted in the state.* An attempt by the state to exercise its taxing authority upon property located and used *beyond* its jurisdiction constitutes a taking without due process of law. International Paper Co. v. Massachusetts, 246 U. S. 135, 38 S. Ct. 292, 62 L. ed. 624, Ann. Cas. 1918C, 617; Air-Way Elec. Appliance Corp. v. Day, 266 U. S. 71, 45 S. Ct. 12, 69 L. ed. 169; Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U. S. 123, 51 S. Ct. 385, 75 L. ed. 879; James v. Dravo Contracting Co. 302 U. S. 134, 58 S. Ct. 208, 82 L. ed. 155, 114 A. L. R. 318; Connecticut General L. Ins. Co. v. Johnson, 303 U. S. 77, 58 S. Ct. 436, 82 L. ed. 673. It is well established that a franchise tax on a foreign corporation may be imposed upon or measured by its business within the taxing state, where there is some reasonable formula prescribed for determining the business done within such state. See, 51 Am. Jur., Taxation, § 863. Such formula may be based upon the ratio of total assets to assets employed within the state, or may provide for an allocation based upon an apportionment of sales, purchases, expenses of manufacture, payroll, or value of tangible property. See, Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165.

On the other hand, a statutory formula for taxation of foreign corporations must not operate as an effort by the state to assert its taxing power beyond its territorial limits. See, Annotation, 75 L. ed. 897. With reference to intangibles, the courts have usually upheld the propriety of the inclusion by the taxing state of intangibles of a foreign corporation which have acquired a business situs in the taxing jurisdiction. See, Annotation, 131 A. L. R. 943.

■ The specific question here is whether a corporation organized in one state with a nominal place of business there, but maintaining its principal place of business and commercial domicile in another state, may be taxed by the latter, upon intangibles with no actual or business situs there and which may be subject to taxation elsewhere. In other words, does the fact that a foreign corporation has acquired a commercial domicile in a particular state in itself confer upon such state the power or jurisdiction to tax intangibles with an actual and business situs elsewhere?

The power of states to tax intangibles of foreign corporations has been passed upon by the United States Supreme Court a number of times, but it is to be noted that such decisions have upheld the tax upon the theory that the evidence established not only that the corporation was commercially domiciled in the taxing state, but also that the intangibles involved had acquired a business situs or were a part of or correlated with a unitary enterprise of said corporation there. Thus, in Wheeling Steel Corp. (a Delaware corporation) v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143, a West Virginia taxing statute was upheld where the intangibles taxed consisted of accounts receivable and bank deposits due from debtors outside of West Virginia. Although outside the state, the intangibles had become closely connected and correlated with the business of the taxpayer in West Virginia, where its principal business office was located. There, the Supreme Court stated (298 U. S. 215, 56 S. Ct. 779, 80 L. ed. 1150):

"* * * we find no ground for appellant's contention that the statutes of West Virginia, under which the tax is laid, are invalid in the view *that they require the taxation of all the intangibles of*

*a foreign corporation doing business within the' State, regardless
of the place where such intangibles may properly be the subject
of taxation. We think the argument is sufficiently met by the con-
struction placed upon these statutes by the state court. It held
that the legislature intended to limit the assessment to property
which was liable to taxation according to the facts and 'the ap-
plicable principles of law.* \* \* \*

*"Our conclusion is that appellant has failed to show that West
Virginia in laying the tax has transcended the limits of its juris-
diction and thus deprived appellant of its property without due
process of law."* (Italics supplied.)

From the statements contained in the opinion, it is clear that the
court recognized the rule that choses in action may acquire a situs
for taxation other than at the domicile of their owner .(298 U. S.
210, 56 S. Ct. 777, 80 L. ed. 1148) "if they have become integral
parts of some local business." It was the localization of the ac-
counts at Wheeling, in addition to the fact that the business
domicile of the corporation was there, that determined the tax-
ability of the accounts in West Virginia. Moreover, the West
Virginia supreme court of appeals had held that the legislature
of that state had not expressed an intention to tax intangibles
which were primarily subject to taxation in another jurisdiction.
The accounts in question were controlled from the main office at
Wheeling and consequently were held to be localized in the taxing
state. This was the situation to which Mr. Chief Justice Hughes
addressed his remarks about a "legal fiction" dominating "realities,"
and all that can be inferred from such remarks is that the domicile
of the corporation in Delaware, because of its organization there,
could not prevail on the right to tax as against the localization of
these accounts in connection with and in furtherance of the busi-
ness of the corporation at Wheeling, West Virginia.

In First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct.
677, 81 L. ed. 1061, 113 A. L. R. 228, the United States Supreme
Court sustained this court's holding that stocks of banks in other
states were taxable in Minnesota, because they had been made a

part of a *localized business conducted in Minnesota.* The court there stated (301 U. S. 237, 57 S. Ct. 678, 81 L. ed. 1063, 113 A. L. R. 228):

"Appellant is to be regarded as legally domiciled in Delaware, the place of its organization, and as taxable there upon its intangibles [cases cited], at least in the absence of activities identifying them with some other place as their 'business situs.' But it is plain that the business which appellant carries on in Minnesota, or directs from its offices maintained there, is sufficiently identified with Minnesota to establish a 'commercial domicil' there, *and to give a business situs there,* for purposes of taxation, to intangibles which are used in the business or are incidental to it, and have thus 'become integral parts of some local business.'" (Italics supplied.)

In Connecticut General L. Ins. Co. v. Johnson, 303 U. S. 77, 58 S. Ct. 436, 82 L. ed. 673, the court held invalid a California statute which attempted to levy a tax upon certain reinsurance of the Connecticut General Life Insurance Company effected outside the state of California. In holding the tax invalid, the Supreme Court stated (303 U. S. 82, 58 S. Ct. 439, 82 L. ed. 678):

" * * * All that appellant did in effecting the reinsurance was done without the state and for its transaction no privilege or license by California was needful. The tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state."

In Butler Brothers v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991, the court upheld a California statute which provided that if the entire business of a foreign corporation was not done within the state the tax should be measured by that portion of the business done within the state, based upon, or by such method of allocation as would fairly assign to the state, the portion of net income reasonably attributable to the business done within this state, and should avoid subjecting the taxpayer to double taxation. A reference thereto clearly indicates that it cannot be cited as authority for holding that a state may tax the intangibles of a

foreign corporation commercially domiciled there, even though such intangibles have no business situs, or relationship to the business of the corporation there. In upholding the validity of a California statute (2 Gen. Laws, Act 8488, p. 3851; Stat. 1929, p. 19; amended, Stat. 1931, p. 2226; Stat. 1935, p. 965) as construed and applied to the taxpayer, the United States Supreme Court stated (315 U. S. 506, 509, 62 S. Ct. 704, 705, 86 L. ed. 995, 997):

"* * * We read the statute as calling for a method of allocation which is 'fairly calculated' to assign to California that portion of the net income 'reasonably attributable' to the business done there. The test, not here challenged, which has been reflected in prior decisions of this Court, is certainly not more exacting. Bass, Ratcliff & Gretton, Ltd. v. Tax Commission, 266 U. S. 271, 45 S. Ct. 82, 69 L. ed. 282; Ford Motor Co. v. Beauchamp, 308 U. S. 331, 60 S. Ct. 273, 84 L. ed. 304. Hence, if the formula which was employed meets those standards, any constitutional question arising under the Fourteenth Amendment is at an end.

"One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' *that it results in extraterritorial values being taxed.* * * *

\* \* \* \* \*

"We cannot say that property, pay roll, and sales are inappropriate ingredients of an apportionment formula. We agree with the Supreme Court of California that these factors may properly be deemed to reflect 'the relative contribution of the activities in the various states to the production of the total unitary income,' so as to allocate to California its just proportion of the profits earned by appellant from this unitary business. * * *" (Italics supplied.)

In Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 86 L. ed. 1090, there is again presented a situation where the corporation was found to have a commercial domicile in the taxing state and where, in addition, the intangibles involved related to or formed a part of the local business of said corporation. The state

law (§§ 1316-1318 of the Tennessee Code of 1932) imposed on foreign and domestic corporations doing business for profit in the state an annual excise tax of "three per cent. of the net earnings for their preceding fiscal year * * * *arising from business done wholly within the state,* excluding earnings arising from interstate commerce." (Italics supplied.)

The tax involved was laid on the corporation's net earnings from the distribution of gas in Tennessee under its contract with the city of Memphis. The Tennessee supreme court upheld the tax on the ground that the distribution of gas under the contract did not constitute interstate commerce and that the net earnings from the enterprise were properly taxable under the foregoing statute. The United States Supreme Court in upholding this view stated (315 U. S. 656, 62 S. Ct. 862, 86 L. ed. 1097):

"* * * Since it was competent for the state to tax *such business done within it,* it was competent to measure the tax by the net earnings of the business as well as by the capital employed. * * *
"* * * There is no contention or showing here that the tax assessed is not upon net earnings *justly attributable to Tennessee.*" (Italics supplied.)

It may be further noted that the principal issue there was whether the tax was prohibited by the commerce clause of the United States Constitution rather than by the due process clause here involved.

Numerous state decisions uphold the viewpoint that a state may not tax intangibles of a commercially domiciled foreign corporation which do not have a business situs there. See, Foster-Cherry Comm. Co. v. Caskey, 66 Kan. 600, 72 P. 268; Ayer & Lord Tie Co. v. Keown, 122 Ky. 580, 93 S. W. 588; Commonwealth v. Consolidated Gas. Co. 170 Ky. 103, 185 S. W. 508; American Barge Line Co. v. Board of Sup'rs of Tax, 246 Ky. 573, 55 S. W. (2d) 416; Chestnut Sec. Co. v. Oklahoma Tax Comm. 173 Okl. 369, 48 P. (2d) 817; Newport Co. v. Tax Comm. 219 Wis. 293, 261 N. W. 884, 100 A. L. R. 1204.

In State v. First Bank Stock Corp. 197 Minn. 544, 551, 556, 267 N. W. 519, 523, 526, 269 N. W. 37, this court pointed out:

"The established local business situs of defendant's bank stocks and their unitary use here in a new integer of business and property furnish all the basis needed to support the challenged tax, for which we hold defendant liable. * * *

"The bank stocks presently considered were not created here, but they are owned here. *More important is the fact that they are here an integrated part, and the main one, of a distinctly localized unit of business,* property and value.

* * * * *

"* * * We conclude *only* that when owned *and used in Minnesota,* as defendant owns *and uses* those now in question, they are subject to taxation by Minnesota." (Italics supplied.)

In Canisteo Corp. v. Spaeth, 211 Minn. 185, 300 N. W. 596, where a tax upon a Delaware corporation licensed to do business in Minnesota was upheld, the securities involved were employed in the principal business of buying, managing, and selling securities, rather than in the business of merely holding and collecting such securities. The principal business referred to gave such securities a business situs in Minnesota. The taxpayer did no business in Delaware, the state of its incorporation, and, while it had an office in New York, it had not been admitted to do business there or in any other state except Minnesota. The New York business was transacted by an agent, and the Minneapolis office of the corporation at all times constituted the business headquarters of the company. Under such circumstances, the situation came within the provisions of § 23(c) of the Minnesota income and franchise tax act,[2] which provides that income derived from carrying on a trade or business shall be assigned to this state *if the trade or business is conducted wholly within the state.* The taxpayer in that case was doing a local business in securities in Minnesota.

---

[2]L. 1933, c. 405, as amended by Ex. Sess. L. 1937, c. 49 (Minn. St. 1941, § 290.17[3], [Mason St. 1940 Supp. § 2394-23(c)]).

Its only business was the buying and selling of securities, and its only income was from such securities and their sale.

In the case at bar, the Canadian corporations were not formed or operated in furtherance of any of the functions of the parent corporation, nor did they become parts of its local business. They were as distinct from the functions of the Duluth business as if they had been engaged in an entirely different line of activity. The business of the Canadian corporations is completely separated from the wholesale hardware business of the taxpayer which gave it a commercial domicile in Minnesota. The findings of the board of tax appeals that the stocks of the Canadian corporations "were not employed in taxpayer's business" and that taxpayer's business "does not consist of the holding of the stock and collecting the income therefrom" clearly distinguishes this case from the Canisteo case.

Likewise, Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728, is clearly to be distinguished from the present case. There the taxpayer, a Delaware corporation with a commercial domicile in Minnesota, owned all the stock of three subsidiary corporations organized respectively under the laws of Nebraska, Illinois, and Delaware. During the taxable periods involved, the taxpayer received dividends from said corporations which transacted no business in Minnesota. The taxpayer's operations were managed and controlled from its Minneapolis office and its business consisted of the merchandising, warehousing, and handling of grain and other commodities in grain-producing states, including Nebraska and Illinois. Its business was a unitary business, and the *subsidiary corporations above referred to were engaged principally in performing subsidiary functions of that business.* As this court there stated (215 Minn. 541, 10 N. W. [2d] 730):

"One of the three foreign corporations * * * organized under the laws of Nebraska, * * * owns an elevator in Omaha which is leased to taxpayer and in which taxpayer * * * conducted its business in Nebraska. The reason assigned for such an arrangement is that a foreign corporation is prohibited by the constitution

470

and laws of Nebraska from acquiring ownership of real property in that state.

"Another is the Cargill Grain Company of Illinois, a corporation organized under the laws of Illinois. Prior to July 1, 1937, taxpayer was unable to operate a public warehouse and elevator business in Illinois, because, under the law of that state, it was unable, as a foreign corporation, to obtain the necessary statutory permit. The Illinois corporation leased part of an elevator in Chicago, in which it transacted substantially the same line of business as that conducted by taxpayer.

"The third [corporation] is * * * a Delaware corporation, whose business consists of the transportation of grain and other commodities by vessels on the Great Lakes and on the seas and by barges operating on the Erie Canal. The reason given for organizing this corporation was *to make available to taxpayer, for use in connection with the financing of its business,* forwarders' receipts of this corporation, as a separate entity, for the purpose of pledging the same as security for money borrowed by taxpayer for financing its business operations." (Italics supplied.)

The above references clearly indicate that the activities of the subsidiary corporations in the Cargill case were closely related to the business of the parent corporation and were exercised in furtherance thereof. The ownership of the stock of such subsidiaries made available to the parent corporation the facilities owned by the former. The connection with the taxpayer's business was so close that it is clear that the dividends from the subsidiaries constituted income from actual transaction of the local business. There, the only question presented for determination was whether the full amount of the dividend income from the subsidiary corporations should be assignable to Minnesota, the taxpayer conceding that Minnesota had the power to impose the tax on all the dividends and interest, but contending that the legislature did not intend, by § 23(d) of the act, to tax income on intangibles where the business of the taxpayer extended over several states, but intended only to tax the portion thereof attributable to Minnesota

business. Here, the Canadian corporations involved did not operate a business which in itself was subsidiary to the business of the tax-payer or conducted in furtherance of its activities. Rather, the Canadian corporations operated a parallel business wholly independent of the Minnesota domicile.

Any appraisal of the facts in the Cargill case as similar to those here is without foundation. Likewise, the court's broad statement that, for purposes of taxation, intangibles have a situs at the tax-payer's commercial domicile was obviously addressed to the situation then before the court and was not intended to include intangibles which, owned by a nonresident corporation, had not themselves acquired a business situs by reason of being used in furtherance of the parent corporation's business. The cases cited in support of the statement negative a purpose to cover all intangibles, regardless of their connection or lack of it with the business of the parent corporation. Our attention has been called to no case that holds that business domicile alone is sufficient to support the application of the taxing power to intangibles wholly disconnected with the furtherance of the nonresident corporation's business.

■ We are of the opinion that the foregoing authorities clearly establish that before the state in which a foreign corporation is commercially domiciled may tax the intangibles of said corporation it must appear that such intangibles have a business situs or are related to and form an integrated part of the business of said corporation there. In so holding, it is our conclusion that we are in accord with the previous decisions of this court on this question, as well as those of the United States Supreme Court. Accordingly, since the tax here sought to be collected does not relate to intangibles or income therefrom clearly within the state's taxing jurisdiction, it is our conclusion that it is not covered by or included within the statutes whereunder respondent seeks to collect it.

Reversed with directions to set aside the tax based upon or measured by dividends derived from the corporate stocks of the Canadian corporations.

472

PETERSON, JUSTICE (dissenting).

■ The facts in the instant case and the legal questions raised by them are the same as those in Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728. Decision here should be controlled by the Cargill case. Instead, it is diametrically opposed to it. In the Cargill case, the taxpayer was a foreign (Delaware) corporation having its commercial domicile in the state. It received dividends declared upon the stock of three foreign (a Delaware, an Illinois, and a Nebraska) corporations, in which it owned all the stock. None of the subsidiaries did any business in the state. The stocks of the subsidiaries were *not* used by the parent in its business. The intercorporate relationship between Cargill and its subsidiaries was that (215 Minn. 542, 10 N. W. [2d] 730):

"* * * The separate entity of the parent and of the stock-owned subsidiaries was observed. Each transacted its own business as a separate corporation. In their intercorporate relations they made contracts, leases, and charges for services and use of the money the same as if no such relationship existed."

In the instant case, the facts are identical, except for such immaterial ones as those that the parent corporation here is a New Jersey instead of a Delaware corporation and that it receives the dividends declared on the stock of only one wholly stock-owned subsidiary, a Canadian corporation, instead of three subsidiaries organized under the laws of different states.

The ultimate question in both cases is the same. In the Cargill case, the decision of the commissioner of taxation, affirmed by the board of tax appeals, was (215 Minn. 544, 10 N. W. [2d] 731)—

"that each of the subsidiaries was an independent corporate entity in law and in fact; that each taxpayer had a 'commercial domicile' in Minnesota, in consequence of which it was taxable here upon income from intangibles from sources outside the state the same as a resident of the state or a corporation organized under the laws thereof, and that the items in question were not to be appor-

tioned under the income tax law, but were to be assigned *in toto* to Minnesota for purposes of income taxation."

In the instant case, precisely the same decision was made by the commissioner and affirmed by the board of tax appeals. In the Cargill case, construing the statute, we said (215 Minn. 548, 10 N. W. [2d] 733), "§ 23(b),[3] assigning to this state income from intangibles not employed in the business of the recipient, if the recipient is *domiciled* within the state, is a statutory application of the rule that income from intangibles follows the domicile of the recipient." (Italics supplied.) We held that a foreign corporation is *domiciled* here if it has its *commercial domicile* here, and that, in consequence of such commercial domicile, it is taxable here upon dividends received by it as the owner of stocks in other foreign corporations. We there followed the decisions of the Supreme Court of the United States holding that a foreign corporation having its commercial domicile in a state other than that of its incorporation sustains such a relationship to that state as to be subject there to state taxation, ad valorem and income, upon its intangibles, even though such intangibles are not used by it in transacting business in the taxing state. We said (215 Minn. 549, 10 N. W. [2d] 733):

"Corporations are organized in some states in full recognition of the fact that they will depart therefrom to other states to establish their business homes. As a practical matter, the migration is no different from that of an individual. Legal fiction should be made to yield to reality. A corporation may make its actual, as distinguished from its technically legal, home in a state other than that of its incorporation. Where a corporation, organized under the laws of one state, transacts no business there and establishes its principal office in another, where it manages and directs its business, it acquires a commercial domicile there, in virtue of which it is subject to taxation there upon its intangibles, even though its business may extend into other states. For purposes of taxation,

---

[3]Section 23(b) has been amended in respects not here material.

intangibles have a situs at the taxpayer's commercial domicile. Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 86 L. ed. 1090; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228 (affirming 197 Minn. 544, 267 N. W. 519, 269 N. W. 37); Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143. Because here Minnesota was the taxpayer's commercial domicile, it was taxable here upon the 'dividends received from its foreign subsidiaries, although they transacted no business here. See annotation, 102 A. L. R. 78."

In Maytag Co. v. Commr. of Taxation, 218 Minn. 460, 17 N. W. (2d) 37, we approved the rule thus announced in the Cargill case.

The majority opinion here attempts to distinguish the Cargill case from the instant one by stating that in the Cargill case the business of the parent and subsidiaries was a *"unitary"* one and that the subsidiaries were engaged in performing *"subsidiary functions"* of the parent's business. There is no basis in fact for the attempted distinction. The facts are directly to the contrary. In the Cargill case, as stated above, the corporate identities of the parent and of the subsidiaries were separate and distinct and so were the businesses of each. There was nothing unitary about either the corporate existence or the business of each. The business of a foreign corporation is said to be unitary where the corporation owns branches in several states and the entire operations of its business through its principal place of business and branches contribute to its entire net income. Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991; Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U. S. 123, 51 S. Ct. 385, 75 L. ed. 879. In the very nature of things, there could have been no unitary relationship between Cargill and its Illinois and Nebraska subsidiaries for the reason that the laws of those states (and the constitution of Nebraska) prohibited the parent from transacting the business in question within their respective borders. Consequently, the business of the subsidiaries was not that of the par-

ent, but their own. As we said, quoting from Garber v. Bancamerica-Blair Corp. 205 Minn. 275, 282, 285 N. W. 723, 727:

"* * * Where * * * the corporate separation is maintained and the subsidiary conducts its own business, the subsidiary, not the parent, is doing the business."

The decision here is, for the reason stated, diametrically opposed to that in the Cargill case.

■ Decision here against the taxpayer is compelled also by our decision in Canisteo Corp. v. Spaeth, 211 Minn. 185, 300 N. W. 596. In that case, we held that a Delaware corporation, qualified to do business in this state, as this taxpayer is, was subject to a tax, under § 23(b) of the income tax act, on its income received from securities in the physical possession of an agent in New York, where, as here, the corporation had its business headquarters in this state. There we held that, while the corporation was technically domiciled in Delaware and while ordinarily we would accord to the word "domiciled" its technical meaning, § 2[4] of the act compelled a construction that the word "domiciled" as used in § 23(b) meant any foreign corporation qualified to do business in the state. Speaking for the court, Mr. Justice Stone said (211 Minn. 188, 300 N. W. 597):

"So the tax on respondent is an income tax only in the sense that it is measured by income. It is essentially an excise tax on the privilege of being here for the transaction of business.

"Section 2, read together with the whole of the act, particularly § 23(b), indicates that when in the latter the word 'domiciled' was used the intent was to include foreign corporations legally doing business here under local law. Any other construction would produce not only irreconcilable conflict between the two sections but also, and in large measure, would defeat a plainly declared purpose of the law."

---

[4]Section 2 was amended by Ex. Sess. L. 1937, c. 49, § 2, in a respect no way material here.

The Canisteo case was followed in the Cargill case, *supra*.

In Chestnut Securities Co. v. Oklahoma Tax Comm. (10 Cir.) 125 F. (2d) 571 (*certiorari* denied, 316 U. S. 668, 62 S. Ct. 1035, 86 L. ed. 1744), is an elaborate consideration of the question. There, a state income tax was imposed upon the entire income of a Delaware corporation licensed to do business in Oklahoma and having its principal place of business (its commercial domicile) there, notwithstanding the fact that its intangible assets were located outside the state. These consisted of *stocks*, bonds, and notes. The Oklahoma statute declared that any foreign corporation licensed to do business in the 'state should be deemed a "resident" thereof in the same manner as § 23(b) of our statute, as construed in the Canisteo case, declares such a corporation doing business in our state to be "domiciled" here. The court said of the Oklahoma statute (125 F. [2d] 575):

"* * * Warrant for the asserted power to tax is derived from dominion over the corporation, whose relationship is the source of the intangible property sought to be taxed. Its exercise is justified by opportunities given, protection afforded and benefits conferred by the taxing state.

"There is a realistic and practical basis for such a rule in the rationale of our complex and interrelated system of taxation."

The Canisteo case cannot be distinguished from the instant one upon the ground that there the taxpayer was engaged in dealing in securities, because that is not the basis upon which the decision rests. It rests upon the fact that there the taxpayer was domiciled in the state within the meaning of the state income tax act because it was qualified to do business here. The taxpayer here is liable for the tax for exactly the same reasons as the taxpayer was in the Canisteo case.

█ I can see no justification for applying a different rule to this taxpayer than was applied to those in the Cargill and Canisteo cases. Of course, the rules laid down in prior cases may be departed from in proper cases. The propriety of so doing was discussed in the majority and dissenting opinions in such recent

cases as Park Construction Co. v. Independent School Dist. 209 Minn. 182, 296 N. W. 475, 135 A. L. R. 59, and in the dissent in Pattridge v. Palmer, 201 Minn. 387, 277 N. W. 18. Whatever justification there may be for departure from the rule of *stare decisis* in proper cases, there is none here. This is a case simply of applying one rule to one taxpayer and another and different rule to another taxpayer, with the result that one is held not liable for a tax for which the other was held liable in identical fact situations. Such a state of affairs should not be. It denies evenhanded justice to all similarly circumstanced. There ought to be uniformity, certainty, and stability in the law. Unless that is true, neither the bar nor the public can know what the law is or how to govern themselves accordingly. Change of rule by decision of appellate courts makes uniformity, certainty, and stability of the law impossible. To those who must guide their conduct in important matters by applicable rules of law, such change is a source of legitimate fear and complaint. Voicing such fear, the Kentucky court, in American Barge Line Co. v. Jefferson County, 246 Ky. 573, 55 S. W. (2d) 416, impliedly criticized the Supreme Court of the United States by stating that it reached its conclusion by applying the rule announced in numerous cited decisions of the Supreme Court of the United States (246 Ky. 577, 55 S. W. [2d] 418), "Assuming that the precedents just cited will be adhered to by the Supreme Court * * *." In truth, every appellate court merits sharp criticism for change of rule in successive cases. Such changes of rule tend to bring its adjudications, no matter how painstakingly and carefully considered or how solemnly announced, *"into the same class as a restricted railroad ticket, good for this day and train only"* (italics supplied), as Mr. Justice Roberts said in his dissent in Smith v. Allwright, 321 U. S. 649, 669, 64 S. Ct. 757, 768, 88 L. ed. 987, 151 A. L. R. 1110. So it is here.

Consequently, I think that we should follow the Cargill and Canisteo cases here and apply to this taxpayer the same rules we applied to the taxpayers in those cases.

Aside from the value of precedents as a guide to the bar and the public, they have a definite value to the court rendering them as settling rules for decision and thus making unnecessary the reconsideration of the same questions in successive cases as if they were *res integra.* Denial of such benefits from precedents makes judicial work unnecessarily burdensome. Here, it is particularly so, as the length of the opinions clearly shows.

■ There is no basis for holding that, notwithstanding our decision in Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728, *supra,* the rule laid down by the decisions of the Supreme Court of the United States is that intangibles owned by a foreign corporation having a commercial domicile within the state are not taxable there unless used by it in the transaction of its business within the state. The rule that intangibles owned by a foreign corporation having only a formal office in the state of incorporation where it transacts no business and having a commercial domicile within a state where it manages and directs its business are taxable at its commercial domicile was first announced in Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143, where a Delaware corporation, having only a so-called paper office in that state and its general business office in West Virginia, where the "management functioned," approved contracts, controlled receipts and expenditures, was held liable for an ad valorem tax on bank deposits in banks both in and without the state and on accounts receivable only a fraction of which represented local manufacture and most of which represented manufacture at the company's plants in other states. The court held that the intangibles were localized where the corporation was and that, because the management of the corporation was localized in West Virginia, so was the corporation itself, thereby localizing the intangibles for purposes of state taxation. The court said that the corporation had acquired a "commercial domicile" in the taxing state, thereby rendering its intangibles subject to state taxes. It was in this connection that the court used this language *arguendo* (298 U. S. 211, 56 S. Ct. 777, 80 L. ed. 1148) :

"* * * To attribute to Delaware, merely as the chartering State, the credits arising in the course of the business established in another State, and to deny to the latter the power to tax such credits upon the ground that it violates due process to treat the credits as within its jurisdiction, is to make a legal fiction dominate realities in a fashion quite as extreme as that which would attribute to the chartering State all the tangible possessions of the Corporation without regard to their actual location."

It is argued in that case that the words "arising in the course of the business established in another State" indicate that the intangibles must be used in transacting business within the taxing state. That argument entirely misconceives what the court meant, *viz.*, that if a foreign corporation establishes its business in a state other than that of incorporation it in effect acquires a domicile there—a commercial domicile—and for all practical purposes is to be regarded in law as it is in fact as a domiciliary of the state. This is clear from the discussion of the limitations of the rule of *mobilia sequuntur personam,* where the court points out that intangibles have no physical situs, because they lack physical characteristics, and that situs is attributable to them only in legal conception. The situs attributed is that of the owner; where the owner is, there its intangibles are also. If the owner migrates, it should in all logic be deemed to take with it the attributable situs of its intangibles.

It was the consensus that the decision in the Wheeling Steel case had brought the law relative to taxation of intangibles of foreign corporations in line with actualities. In the Canisteo[5] and Cargill cases, we, the same as other courts, took notice of the fact that corporations depart from the states of incorporation to establish their business homes elsewhere. As well said by Mr. Justice Cardozo in International Milling Co. v. Columbia Transp. Co. 292

[5] In the Canisteo case, Mr. Justice Stone said (211 Minn. at p. 186, 300 N. W. p. 596) that, because the Delaware corporation there involved had its business headquarters here, "Its only business home was here in Minnesota, * * *."

U. S. 511, 519, 54 S. Ct. 797, 799, 78 L. ed. 1396, 1400 (reversing 189 Minn. 507, 250 N. W. 186), where a Delaware corporation having its principal office and place of business in Minnesota was suing in the place of its residence:

"* * * At the outset, we mark the fact that the petitioner, though a Delaware corporation, is suing in the state of its business activities. For many purposes, its domicile in law is in the state of its creation (Shaw v. Quincy Mining Co., 145 U. S. 444, 12 S. Ct. 935, 36 L. ed. 768; Seaboard Rice Milling Co. v. Chicago, R. I. & P. Ry. Co., 270 U. S. 363, 46 S. Ct. 247, 70 L. ed. 633), *but it is living its life elsewhere. In a very real and practical sense, it is a resident of the forum,* like the plaintiff in the Taylor case (266 U. S. 200, 207, 46 S. Ct. 47, 69 L. ed. 247, 42 A. L. R. 1232), who was domiciled in one state and resided in another. Certainly its relation to the locality was so permanent and intimate as to relieve it of the opprobrium of an impertinent intruder when it went into the local courts." (Italics supplied.)

Logically, domicile in fact should carry with it all the consequences flowing from domicile. That is exactly what the court held in the Wheeling Steel case. This is made crystal-clear in Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 652, 62 S. Ct. 857, 860, 86 L. ed. 1090, 1094, where the court said, upholding a nondiscriminatory state tax by the state of Tennessee upon the net income of a foreign corporation having a commercial domicile in that state:

"* * * It has thus established a commercial domicile in Tennessee by virtue of which it is subject to taxation there upon its intangibles, unless such taxation infringes the commerce clause. Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143."

In short, the rationale of the Wheeling Steel decision is that, where a foreign corporation acquires a commercial domicile in a state, that state acquires jurisdiction of the corporation itself analogous to the jurisdiction of the state of its legal domicile. This is an

independent ground of jurisdiction separate from that where juris-diction is acquired over a *res* by reason of its localization within the state. The former reaches the owner of the *res* and through the owner the *res* also. Spector Motor Service, Inc. v. Walsh (2 Cir.) 139 F. (2d) 809, reversed on other grounds, 323 U. S. 101, 65 S. Ct. 152, 89 L. ed. —; Smith v. Ajax Pipe Line Co. (8 Cir.) 87 F. (2d) 567 (holding upon the authority of the Wheeling Steel case that, where a Delaware corporation doing an interstate pipe-line business established a commercial domicile in Missouri, it was subject there to a state property tax on bank deposits in New York banks) ; Annotations, 143 A. L. R. 370; 113 A. L. R. 234; 85 U. of Pa. L. Rev. 121; Ramsey, "A New Theory of Corporate Domicile for Tax Purposes," 23 Am. Bar Assn. J. 543; Rottschaefer, Con-stitutional Law, p. 649.

In commenting on the Wheeling Steel case, Goodrich, Conflict of Laws (2 ed.) p. 105, says:

"\* \* \* The Supreme Court permitted this taxation, pointing out that the assets in question had acquired a business situs in West Virginia, and that the corporation had a 'commercial domicile' there. It seems that in cases of this sort, the so-called commercial domicile is the important factor to search for. Once it appears that a foreign corporation has made the taxing state the real center of its business activity it is proper for the taxing state to treat the corporation as sufficiently connected with that state to render its intangible property taxable there. The conclusion that this is the real basis of the Wheeling Steel decision, is strengthened by a still more recent case."

The "more recent case" referred to is First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228.

The cases cited in the majority opinion are distinguishable. *First,* all of them are distinguishable upon the ground that none of them involve a case of commercial domicile as the instant case does. *Second,* some of them involve the allocation of income among states for purposes of taxation by means of a formula, where a foreign

corporation, having its principal place of business in the state of its incorporation, does business in several other states seeking to tax the part of its earnings attributable to the business transacted in such states. In these cases the place of the corporation's technical or paper domicile and its actual one were the same. Among these are Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991 (involving the statutory formula of California for taxing earnings from business transacted there by an Illinois corporation having its principal place of business in Illinois). Of similar import are Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U. S. 123, 51 S. Ct. 385, 75 L. ed. 879; Air-way Electric Appliance Corp. v. Day, 266 U. S. 71, 45 S. Ct. 12, 69 L. ed. 169; Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed. 165; International Paper Co. v. Massachusetts, 246 U. S. 135, 38 S. Ct. 292, 62 L. ed. 624, Ann. Cas. 1918C, 617. It is clear that such cases involved essentially different problems from that presented here. That the Supreme Court did not intend by its decision in the case of Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991, *supra,* to change or modify its views that intangibles of a foreign corporation are taxable at its commercial domicile is manifest from the fact that those views were reiterated less than a month later in Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 86 L. ed. 1090, *supra.* Both cases are found in the same volume of the United States reports. *Third,* other cases are there cited involving state taxes upon the receipts of foreign corporations derived from business transacted in the state of their actual as well as legal domicile, where the business from which the receipts were derived had no connection with the taxing state. The distinction is that in such cases neither the corporation nor the intangibles were localized in the taxing state; here they are, in virtue of the taxpayer's commercial domicile in this state. Such cases clearly are not in point. Connecticut General L. Ins. Co. v. Johnson, 303 U. S. 77, 58 S. Ct. 436, 82 L. ed. 673 (California tax on receipts derived from reinsurance contracts entered into by a Connecticut corporation in Connecticut); James

v. Dravo Contracting Co. 302 U. S. 134, 58 S. Ct. 208, 82 L. ed. 155, 114 A. L. R. 318 (West Virginia gross receipts tax on part of a Pennsylvania corporation's business transacted in Pennsylvania).

While a state has no jurisdiction over the out-of-state transactions of a foreign corporation, even where the corporation is doing business within the state, it does have such jurisdiction where the foreign corporation has established a commercial domicile within the state. Reviewing many of the decisions of the Supreme Court of the United States cited in these opinions and others also, the rule has been stated in 23 Am. Jur., Foreign Corporations, § 98, as follows:

"* * * However, the general doctrine [that a state has no jurisdiction over out-of-state transactions of a foreign corporation] may be inapplicable where any effect of the local law beyond the borders of the state is merely incidental to corporate activities within them, over which the state has jurisdiction, and this appears to be true where the state may be said to have a grip on the corporate activities by virtue of the fact that the corporation has established its commercial domicil therein."

The state cases cited are all distinguishable. Unlike the instant case, none of them involved a question of commercial domicile. At the outset, it should be noted that all the state cases cited are found in an annotation in 104 A. L. R. 806, *et seq.* at pp. 807 to 809. The same annotation at p. 809 cites Alabama, New York, Virginia, and West Virginia cases upholding the right of state taxation. The case annotated is that of Re Wheeling Steel Corp. Assessment (State of West Virginia, Appellant) 115 W. Va. 553, 177 S. E. 535, 104 A. L. R. 802, affirmed under title of Wheeling Steel Corp. v. Fox in 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143. The conclusion of the annotator (p. 812) was that the better reason supported the view that intangibles are taxable at a foreign corporation's commercial domicile.[6]

---

[6]"* * * It would seem, in justice and fairness to the state where the principal business is conducted, and where the bulk of the protection is afforded, that the power constitutionally reserved to the domicil to tax in

Some further differences may be noted. In Foster-Cherry Comm. Co. v. Caskey, 66 Kan. 600, 72 P. 268, the question was whether doing business in a state through a branch drew to that state the capital stock of a corporation having its principal place of business in another state where it was incorporated. The case of Ayer & Lord Tie Co. v. Keown, 122 Ky. 580, 93 S. W. 588, did not involve intangibles at all. It involved ties cut and delivered to a common carrier which were held to be exempt from state taxation upon the ground that the ties were in interstate commerce under the rule of Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. ed. 715. See, State v. Continental Oil Co. 218 Minn. 123, 18 N. W. (2d) 542. In American Barge Line Co. v. Jefferson County, 246 Ky. 573, 55 S. W. (2d) 416, *supra,* the facts were different, in that accounts receivable were not kept at the company's office in Kentucky, although they were collected there. These were held not to have a "business situs" in Kentucky. The court pointed out that no attempt was

certain fields presupposes a domicil not merely in form, but in reality and in substance,—not merely a 'paper domicil,' but one which ordinarily carries the substantial characteristics of a domicil in fact. Furthermore, should that power be conceded even to such a domicil, its existence, without its actual exercise, should not, in fairness to such other state, exclude the latter from the power to tax. While it may be conceded that the existence, irrespective of its exercise, of the power to tax in the domicil, is the test of its exclusive character, yet the idea that a state, itself waiving its right to tax, may, by virtue of its mere nominal claim to a corporation, obstruct its being taxed in another state where it receives its main protection, does not appeal to an impartial mind. In such case the latter state is the de facto domicil of the corporation, and when fact conflicts with form the modern trend, particularly in the field of taxation, is to ignore the latter. That is the basis of the rule upholding the power, and sometimes the exclusive power, of a state to tax intangibles of nonresidents having a business situs in the state. That is the basis also of the rule upholding the exclusive power of the actual situs of tangibles to tax the same. May not, and should not, the same fundamental principle be applied in respect of taxation of a corporation whose domicil in the state claiming, but not exercising, its power to tax, is not a 'domicil' in the strict sense of that word, but at most a paper relation, often assumed as a subterfuge to avoid just taxation?"

made to show such a situs. That case was decided prior to the Wheeling Steel case. The court attempted to follow numerous decisions of the Supreme Court with a prefatory remark, quoted above (246 Ky. 577, 55 S. W. [2d] 418): "Assuming that the precedents just cited will be adhered to by the Supreme Court * * *." In Commonwealth v. Consolidated Cas. Co. 170 Ky. 103, 185 S. W. 508, the bonds sought to be taxed had acquired an actual situs at the domicile of the taxpayer in West Virginia. The later Oklahoma cases follow the Wheeling Steel case. Sunray Oil Corp. v. Oklahoma Tax Comm. 192 Okl. 159, 134 P. (2d) 995. The comment in Chestnut Securities Co. v. Oklahoma Tax Comm. (10 Cir.) 125 F. (2d) 571 (*certiorari* denied, 316 U. S. 668, 62 S. Ct. 1035, 86 L. ed. 1744), *supra,* that the Wisconsin court in Newport Company v. Wisconsin Tax Comm. 219 Wis. 293, 261 N. W. 884, 100 A. L. R. 1204, *certiorari* denied, 297 U. S. 720, 56 S. Ct. 598, 80 L. ed. 1004, misconceived the applicable federal rule, as the Wheeling Steel and other decisions rendered by the Supreme Court of the United States plainly show, applies to all the state cases cited where the fact situation in any substantial respect resembles the instant case.

It should be observed that in First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228, the state's claim was that the stocks in question had acquired a business situs here in virtue of the fact that the taxpayer dealt in such stocks here. That contention was sustained and was the basis of our decision. In affirming, although no question of commercial domicile was involved—the claim being that the *res* rather than the taxpayer had a situs here—the Supreme Court of the United States gave as a separate and adequate reason for sustaining the tax the one, additional to that of business situs here of the stocks, that the taxpayer itself had acquired a commercial domicile here. The court said that the taxpayer's business was sufficiently identified with the state "to establish a 'commercial domicil' there, *and* to give business situs there, for purposes of taxation, to intangibles which are used in the business or are incidental to it, and have thus 'become integral parts of some local business.'"

486

(Italics supplied.) The conjunctive "and" clearly shows that commercial situs of the corporation itself and business situs of its intangibles are separate concepts and that the court regarded them as sufficient, separate grounds for sustaining the tax, but the decision was placed upon the latter ground. See, Annotations, 143 A. L. R. 370 and 113 A. L. R. 234, *supra*. Because the court indicated that commercial domicile was an independent ground for sustaining the tax, the decision is regarded as indicating an intention to apply the doctrine in such cases. See, Goodrich, Conflict of Laws (2 ed.) p. 105, *supra*. The later case of Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 86 L. ed. 1090, *supra*, clearly shows that this was the court's intention.

In conclusion, I think that we should follow the Canisteo and Cargill cases. Further, I think that the rule here announced is a sort of judicial throwback by which form and fiction of a paper corporate domicile is made to control the realities of actual domicile.

YOUNGDAHL, JUSTICE (concurring in dissent).

I agree with the views expressed by Mr. Justice Peterson.