CARGILL, INCORPORATED, v. G. HOWARD SPAETH.
CARGILL WAREHOUSE COMPANY v. SAME.[1]

July 9, 1943.

Nos. 33,481, 33,482, 33,483.

*Leland W. Scott, John W. Windhorst,* and *Fletcher, Dorsey, Barker, Colman & Barber,* for relators.

*J. A. A. Burnquist,* Attorney General, and *P. F. Sherman,* Assistant Attorney General, for respondent.

[1]Reported in 10 N. W. (2d) 728.

PETERSON, JUSTICE.

Three writs of *certiorari* to review as many decisions of the board of tax appeals affirming determinations of the commissioner of taxation that the taxpayers were liable for deficiency income taxes upon certain dividends and interest not assigned by them in their tax returns to the state of Minnesota.

### Numbers 33481 and 33482
### TAXPAYER CARGILL, INCORPORATED

These cases involve taxes for the periods from December 1, 1936, to December 31, 1936, and for the entire year 1937.

Cargill, Incorporated, was organized under the laws of Delaware, where it maintains a statutory office for the purpose of continuing its right to exist and function as a corporation, but transacts no business. It took over the business of another corporation known as Cargill Elevator Company. Taxpayer has its general business office in Minneapolis, where all corporate business is transacted and from which it manages and controls its operations, including those in Minnesota and in other states. Its business consists of merchandising, warehousing, and handling of grain and other commodities. Its operations extend to substantially every grain-producing state, including Nebraska and Illinois.

During the taxable periods here involved, taxpayer received dividends from three foreign corporations, which transacted no business in Minnesota and all of whose capital stock it owned.

One of the three foreign corporations is the Cargill Nebraska Company, a corporation organized under the laws of Nebraska, which owns an elevator in Omaha which is leased to taxpayer and in which taxpayer, as lessee, conducted its business in Nebraska. The reason assigned for such an arrangement is that a foreign corporation is prohibited by the constitution and laws of Nebraska from acquiring ownership of real property in that state.

Another is the Cargill Grain Company of Illinois, a corporation organized under the laws of Illinois. Prior to July 1, 1937, taxpayer was unable to operate a public warehouse and elevator busi-

ness in Illinois, because, under the law of that state, it was unable, as a foreign corporation, to obtain the necessary statutory permit. The Illinois corporation leased part of an elevator in Chicago, in which it transacted substantially the same line of business as that conducted by taxpayer.

The third is Cargo Carriers, Incorporated, a Delaware corporation, whose business consists of the transportation of grain and other commodities by vessels on the Great Lakes and on the seas and by barges operating on the Erie Canal. The reason given for organizing this corporation was to make available to taxpayer, for use in connection with the financing of its business, forwarders' receipts of this corporation, as a separate entity, for the purpose of pledging the same as security for money borrowed by taxpayer for financing its business operations.

The three corporations mentioned did not file any income tax return or pay any income tax in Minnesota.

### Number 33483
#### Taxpayer Cargill Warehouse Company

This case involves the taxable period from January 1 to November 30, 1936. Cargill Warehouse Company, a Delaware corporation, like the taxpayer in the other cases, had its statutory office in Delaware and its principal business offices, its commercial domicile, in Minneapolis. Prior to November 30, 1936, all the stock of this corporation was owned by the Cargill Elevator Company. Taxpayer owned, leased, and operated warehouses and elevators. It carried on an extensive business with the parent corporation, in the course of which the parent corporation paid to it interest amounting to $39,819.89, mainly on open indebtedness accounts, and this taxpayer paid interest amounting to $17,979.80 on similar items. A tax was levied against the subsidiary on the difference, $21,840.09, as interest income.

Some facts are common to all the cases. The separate entity of the parent and of the stock-owned subsidiaries was observed. Each transacted its own business as a separate corporation. In their

intercorporate relations they made contracts, leases, and charges for services and use of money the same as if no such relationship existed. The principal source of the Nebraska corporation's income was rent paid to it by the parent corporation. Substantially all the income of the Illinois corporation was charges for handling and storage of grain and commissions and brokerage on transactions with the parent. Between 80 and 90 percent of the income of Cargo Carriers, Incorporated, was for freight charges, brokerage and charter fees, and miscellaneous items paid by the parent.

In Nos. 33481 and 33482, the taxpayer's original objections to the inclusion of the dividends in its net income for purposes of income taxation were that each of the subsidiaries was a foreign corporation not doing business in Minnesota; that they were "not in any way integrated with the business of taxpayer either as conducted in the state of Minnesota or elsewhere," and that any income received by taxpayer from such sources was in no way connected with its local business in Minnesota and was allocable under the state income tax law to the state of Delaware, taxpayer's domicile, and not to the state of Minnesota.

In No. 33483, taxpayer's original objections to the inclusion of the interest received from the parent corporation in its net income for purposes of taxation were that it was a foreign corporation whose business was not integrated with that of its parent and that the interest should be assigned under the state income tax law to the state of Delaware, taxpayer's domicile, and not to the state of Minnesota.

Subsequent to the filing of the original objections by the taxpayers, we decided the case of The Canisteo Corporation v. Spaeth, 211 Minn. 185, 188, 300 N. W. 596, 597, holding in effect that the word "domiciled" was used in the state income tax law "to include foreign corporations legally doing business here under local law." Deeming the decision an insuperable obstacle to their contentions, taxpayers promptly amended, as they had the right to do, and changed their position by making the diametrically opposite claim that the subsidiaries were integrated units of the parent corpora-

tion employed by it in its far-flung business operations and that the dividends and interest in question should be assigned under the state income tax law not to the domicile of either the parent in Nos. 33481 and 33482 or the subsidiary in No. 33483, as the recipients of such income, but to the states where the same was earned.

In each case the commissioner of taxation found, and his decision was affirmed by the board of tax appeals, that each of the subsidiaries was an independent corporate entity in law and in fact; that each taxpayer had a "commercial domicile" in Minnesota, in consequence of which it was taxable here upon income from intangibles from sources outside the state the same as a resident of the state or a corporation organized under the laws thereof, and that the items in question were not to be apportioned under the income tax law, but were to be assigned *in toto* to Minnesota for purposes of income taxation.

■ First we shall consider the dividends received by the parent from its subsidiaries. The state income tax law[2] prescribes rules for assigning income to this state or other states or countries. The state contends that the dividends and interest in question should be assigned to Minnesota under § 23(b)[3] as a domiciled-within-the-state recipient's "income or gains from intangible personal property *not employed* in the business of the recipient." (Italics supplied.) Taxpayer contends that the dividends were income from

[2]L. 1933, c. 405, and amendments, Minn. St. 1941, §§ 290.01 to 290.63 (Mason St. 1940 Supp. §§ 2394-1 to 2394-61).

[3]"Sec. 23 [Minn. St. 1941, § 290.17 (Mason St. 1940 Supp. § 2394-23)]. Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

\* \* \* \* \*

"(b) \* \* \* Income or gains from intangible personal property not employed in the business of the recipient of such income or gains, and from intangible personal property employed in the business of such recipient if such business consists principally of the holding of such property and the collection of the income and gains therefrom, wherever held and whether in trust or otherwise, shall be assigned to this state if the recipient thereof is domiciled within this state; \* \* \*."

intangibles *employed* in its business, carried on partly within and partly without the state, and that such income is assignable in virtue of § 23(d)[4] under the provisions of § 25 (amended by L. 1939, c. 446, § 22). The assignability of the dividends depends on whether or not the stock of the subsidiaries was employed in the business of the parent, the recipient of the dividends. If the question is answered in the negative, the dividends were assignable solely to Minnesota; if it is answered in the affirmative, they were assignable among Minnesota and other states by apportionment as provided in § 25.

Primarily, the question whether taxpayer employed the stocks of the subsidiaries in its business is one of fact. The determination of the taxing officials, if reasonably supported by competent evidence and permissible inferences therefrom, will be sustained under the rule that findings of administrative officers, when made upon such proofs, are final on review. State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544; In re Estate of Calich, 214 Minn. 292, 8 N. W. (2d) 337. See Helvering v. National Grocery Co. 304 U. S. 282, 58 S. Ct. 932, 82 L. ed. 1346.

Since the board of tax appeals determined upon the merits that the dividends and interest were received from intangibles *not em-*

---

[4]Prior to July 15, 1937, the effective date of Ex. Sess. L. 1937, c. 49, § 23(d), read:

"Income derived from carrying on a trade or business partly within and partly without this state, including in the case of a business owned by natural persons the income imputable to the owner for his services and the use of his property therein, shall be governed by the provisions of Section 25. This shall not apply to business income subject to the provisions of subdivision (a)." (L. 1933, c. 405, § 23[d].)

As amended in 1937, the section reads [*Id.* § 290.17 (§ 2394-23)]:

"(d) Whenever a trade or business is carried on partly within and partly without this state, the entire income derived from such trade or business, including income from intangible property employed in such business and including in the case of a business owned by natural persons the income imputable to the owner for his services and the use of his property therein, shall be governed, except as otherwise provided in sections 32-2 and 32-3, by the provisions of Section 25, notwithstanding any provisions of this Section 23 to the contrary. * * *" (Ex. Sess. L. 1937, c. 49, § 17.)

*ployed* in the taxpayer's business, we shall not stop to inquire whether or not, as the state contends, the taxpayer, after having caused the corporate subsidiaries to be organized, will be heard to say that the corporate entities should be disregarded and that only the taxing authorities may raise that question. See Higgins v. Smith, 308 U. S. 473, 60 S. Ct. 355, 84 L. ed. 406.

Here, the evidence supports the finding that the stocks of the subsidiaries were not employed in the business of the parent. The written statement in the original objections to the effect that the stocks were not employed by the taxpayer in its business were admissions constituting substantive evidence sufficient, standing alone, to support a finding of the fact to which they related. Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334; Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451. Although taxpayer had a right to amend, its statements in the original objections were admissible upon the same theory as are admissions in a pleading. 2 Dunnell, Dig. & Supp. § 3424.

Proof that the subsidiaries' stocks were not employed in the parent's business is not confined to the admissions. The other evidence supports the view that the separate corporate entities of the parent and the subsidiaries were punctiliously observed and that their intercorporate business was transacted as if no parent-subsidiary relationship existed. "Where * * * the corporate separation is maintained and the subsidiary conducts its own business, the subsidiary, not the parent, is doing the business." Garber v. Bancamerica-Blair Corp. 205 Minn. 275, 282, 285 N. W. 723, 727. Accord, Cannon Mfg. Co. v. Cudahy Packing Co. 267 U. S. 333, 45 S. Ct. 250, 69 L. ed. 634. So it is here.

In People ex rel. Waclark Realty Co. v. Williams, 198 N. Y. 54, 91 N. E. 266, 267, 28 L.R.A.(N.S.) 371, holding that the capital of a sole-owned corporation was employed in its, and not its sole stockholder's, business, the court said:

"The relator was really a holding corporation for Senator Clark. It employed its capital in the precise way contemplated by the incorporators, in holding the title to a large quantity of real prop-

erty which it had acquired from its principal stockholder to promote the personal convenience of that gentleman. Where a corporation devotes its capital stock to the very purpose for which it was formed, it will hardly do to say that such stock is not employed."

A corporation and a sole owner of its stock will be treated as separate and distinct for income tax purposes, except in some exceptional cases, such as where the corporation is a mere sham and is used for tax avoidance, and in some others not here pertinent. In Moline Properties, Inc. v. Commr. of Int. Revenue, 319 U. S. 436, 439, 63 S. Ct. 1132, 1134, 87 L. ed. ..., in discussing the question, the court said that, where a corporation is organized for a purpose of the taxpayer, "so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity," because the choice of the advantages of the corporate form for business purposes required the acceptance of resulting tax disadvantages.

In Interstate Transit Lines v. Commr. of Int. Revenue, 319 U. S. 590, 593, 63 S. Ct. 1279, 1281, 87 L. ed. ..., the taxpayer, a Nebraska corporation, caused a subsidiary to be organized under the laws of California to engage in intrastate transportation business in that state, which it, as a foreign corporation, was prohibited from carrying on. There, as here, the taxpayer claimed that the subsidiary's separate existence should be ignored and that it only should be treated as the taxpayer. The court said:

"For petitioner to engage in intrastate business in California, was, on the findings, illegal. Thus, the businesses of the two companies were distinct."

The finding that the stocks of the subsidiaries were intangibles not employed in the parent's business should be sustained. In short, the stock of each subsidiary was employed to carry on its own, not the parent's business. The separate and distinct corporate entities were maintained and observed. In the cases of the Illinois and Nebraska subsidiaries, the business transacted by them

could not, as a matter of law, have been transacted by the parent. It could not use the stocks of its subsidiaries to carry on business which it was prohibited by law from doing. These. cases come squarely within the rule of Interstate Transit Lines v. Commr. of Int. Revenue, *supra.* In the case of Cargo Carriers, Incorporated, it appears that it was organized to carry on a distinct line of business for the parent's advantage and convenience. That is a sufficient reason for treating it as "a separate taxable entity." Moline Properties, Inc. v. Commr. of Int. Revenue, 319 U. S. 436, 439, 63 S. Ct. 1132, 1134, 87 L. ed. ..., *supra.*

The dividends were from intangibles not employed in taxpayer's business. They were assignable solely to Minnesota for purposes of income taxation.

We have examined the cases cited by taxpayer and find that they are not controlling. We shall refer to only two of them. In Kentucky Tax Comm. v. Fourth Avenue Amusement Co. 293 Ky. 668, 170 S. W. (2d) 42, 43, the case arose under an entirely different statute [Ky. St. § 4281b-32], expressly providing that dividends "where received * * * outside of the State shall be allocated outside of the State." The difference between the Kentucky and our statute is so obvious that it is a work of supererogation further to distinguish them.

In Butler Bros. v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991, it was held that, where a taxpayer's legal and commercial domicile was in Illinois, but it transacted business in several states, part of its income was allocable to California, where it did business, under a statute of that state providing for ascertaining the portion of its income derived from business transacted there. The case does not involve the question of taxability of dividends received from a subsidiary doing business in a foreign state by its parent at its commercial domicile.

■ The provision of § 23 (b), assigning to this state income from intangibles not employed in the business of the recipient, if the recipient is domiciled within the state, is a statutory application of the rule that income from intangibles follows the domicile of the

recipient. Rottschaefer, "The Minnesota State Income Tax," 18 Minn. L. Rev. 93, at p. 154. In Graves v. Schmidlapp, 315 U. S. 657, 660, 62 S. Ct. 870, 873, 86 L. ed. 1097, 1100, 141 A. L. R. 948, 951, the court said:

"Intangibles, which are legal relationships between persons and which in fact have no geographical location, are so associated with the owner that they and their transfer at death are taxable at the place of his domicile, where his person and the exercise of his property rights are subject to the control of the sovereign power."

In this connection it should be borne in mind that the determination of the board of tax appeals is not based upon the ground given in The Canisteo Corp. v. Spaeth, 211 Minn. 185, 300 N. W. 596, *supra*, that taxpayers in the several cases were legally doing business in the state, but that each had a "commercial domicile" here. The finding of commercial domicile, if not in effect conceded, was clearly established.

Corporations are organized in some states in full recognition of the fact that they will depart therefrom to other states to establish their business homes. As a practical matter, the migration is no different from that of an individual. Legal fiction should be made to yield to reality. A corporation may make its actual, as distinguished from its technically legal, home in a state other than that of its incorporation. Where a corporation, organized under the laws of one state, transacts no business there and establishes its principal office in another, where it manages and directs its business, it acquires a commercial domicile there, in virtue of which it is subject to taxation there upon its intangibles, even though its business may extend into other states. For purposes of taxation, intangibles have a situs at the taxpayer's commercial domicile. Memphis Natural Gas Co. v. Beeler, 315 U. S. 649, 62 S. Ct. 857, 86 L. ed. 1090; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 S. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228 (affirming 197 Minn. 544, 267 N. W. 519, 269 N. W. 37) ; Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773, 80 L. ed. 1143. Because

here Minnesota was the taxpayer's commercial domicile, it was taxable here upon the dividends received from its foreign subsidiaries, although they transacted no business here. See annotation, 102 A. L. R. 78.

■ What has been said is sufficient to show that the interest received by the subsidiary warehouse company from its parent, the elevator company, is taxable in Minnesota. The fact that the subsidiary had its commercial domicile here renders it subject to a tax on such income. Since both the subsidiary and the parent had their commercial domicile within the state, there may be some question whether the interest was not received here as a matter of law. But decision need not be put on that ground. A state may tax interest received by a domiciliary thereof from a source without the state. New York ex rel. Cohn v. Graves, 300 U. S. 308, 57 S. Ct. 466, 81 L. ed. 666, 108 A. L. R. 721.

Writs dismissed and decision of board of tax appeals in each case affirmed.

MR. JUSTICE MAGNEY, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.