## MINNESOTA TRIBUNE COMPANY, SUCCESSOR BY MERGER TO MUTUAL HOLDING COMPANY, v. COMMISSIONER OF TAXATION.[1]

May 20, 1949.

No. 34,882.

[1]Reported in 37 N. W. (2d) 737.

*Hayner N. Larson, John B. Faegre, Jr.,* and *Faegre & Benson,* for relator.

*J. A. A. Burnquist,* Attorney General, and *David W. Lewis* and *Charles P. Stone,* Assistant Attorneys General, for respondent.

*Doar & Knowles* filed a brief as *amici curiae* on behalf of the contention of relator.

THOMAS GALLAGHER, JUSTICE.

Certiorari on the relation of Minnesota Tribune Company, *a Minnesota corporation,* successor by merger in 1943 to Mutual Holding Company, *a Delaware corporation,* to review a decision of the board of tax appeals affirming an order of the commissioner of taxation determining additional tax liability of Mutual Holding Company in the sum of $2,862 for the taxable year ending December 31, 1941.

For convenience, Minnesota Tribune Company for the period prior to its merger with Mutual Holding Company will be referred to as *Tribune* and subsequent to such merger as *relator,* while Mutual Holding Company will be referred to as *Mutual.*

In its income and franchise tax return for 1941, *Mutual* reported receipt of $54,000 in nontaxable dividends from stock held by it in *Tribune.* The commissioner treated such dividends as taxable income and assessed the additional tax above described by virtue thereof.

Minn. St. 1941, 290.02, imposes a privilege or franchise tax on foreign corporations "for the actual transaction * * * of any local business within this state * * * measured by such corporations' taxable net income for the taxable year for which the tax is imposed, * * *." M. S. A. (1945) 290.17 provides that taxable gross income assigned to Minnesota for the computation of this tax shall include:

"* * * income or gains * * * from intangible personal property employed in the business of such recipient if such business consists principally of the holding of such property and the collection of the income and gains therefrom, wherever held and whether in trust or otherwise, * * * *if the recipient thereof is domiciled within this state; * * *." and

"Income derived from carrying on a trade or business, * * * *if the trade or business is conducted wholly within this state,* and to other states if conducted wholly without this state." (Italics supplied.)

It is the contention of respondent that income which *Mutual* received from its *Tribune* stock was assignable to Minnesota and taxable here under the foregoing sections, because *Mutual,* by virtue of its activities here, had acquired a commercial domicile within this state, and the *Tribune* stock which it owned had its business situs in and constituted an integral part of the business which *Mutual* conducted exclusively in Minnesota.

Relator asserts that *Mutual's* only activities here consisted in doing such things as were incident to the *mere holding of stock in another corporation* and the receipt and distribution of dividends therefrom to its stockholders; that such activities could not be held to constitute "doing business" within this state; and that hence *Mutual* had not acquired a commercial domicile here so as to subject the income described to taxation under the foregoing statutes.

*Mutual* was incorporated under the laws of Delaware in 1924. Its articles recite that it was to—

"purchase, acquire, * * * own, hold, * * * and generally deal and trade in * * *, shares of stock, voting trust certificates and other evidences of title to shares of corporate stock, * * *."

It is further recited therein:

"If, and to the extent that, this corporation shall become the owner by purchase from Frederick E. Murphy, as Trustee, of shares of the Preferred Stock in the *Minnesota Tribune Company,* a Minnesota corporation, or of the Voting Trust Certificates by which the same are now represented, or of both, this corporation will issue, in exchange (and in full payment) therefor, share for share, certificates of equal par value representing Preferred Stock in this corporation."

It is admitted by *relator* that the underlying reason for and the purpose of organizing *Mutual* was to establish and exercise control over *Tribune,* which was engaged in the business of publishing the *Minneapolis Tribune.* The immediate reason for following this method of obtaining such control was to prevent the holders of other substantial blocks of stock in *Tribune* from acquiring such addition-

al shares as would give to them control of *Tribune* to the exclusion of the organizers of *Mutual.*

Subsequent to its organization, *Mutual* acquired, held, and voted the controlling stock of *Tribune* and collected and distributed the dividends paid on said stock. It did not qualify here as a foreign corporation. It owned no other property or stock, and, except for its corporate books and records and a small cash balance, had no other property here and engaged in no other business.

Through a courtesy arrangement with *Tribune,* it maintained its only office in the latter's building in Minneapolis, where its stockholders' and directors' meetings were held and its corporate books and records were kept. Its clerical work was performed there by *Tribune* employes without charge.

During the taxable year 1941 *Mutual* had seven directors; *Tribune* had five. *Mutual's* directors comprised a majority of *Tribune's.* The president of *Mutual* was vice president and general manager of *Tribune.* Its secretary-treasurer was likewise secretary-treasurer of *Tribune.*

In 1941, its meetings consisted of five directors' meetings and its annual stockholders' meeting. At such meetings the business was confined to the election of directors or officers and the appointment of proxies to vote its *Tribune* stock. At one meeting it specifically authorized such proxies to support a resolution of *Tribune's* stockholders directing the sale of *Tribune* properties. The foregoing constituted all of its activities within the state.

■ The question whether a foreign corporation may be held to be "doing business" within another state where it is not qualified is primarily one of fact. The determination of this issue ordinarily does not depend upon any single act of such foreign corporation, but rather upon the effect of all its actions within the state involved. See, Von Baumbach v. Sargent Land Co. 242 U. S. 503, 37 S. Ct. 201, 61 L. ed. 460; Edwards v. Chile Copper Co. 270 U. S. 452, 46 S. Ct. 345, 70 L. ed. 678; Phillips v. International Salt Co. 274 U. S. 718, 47 S. Ct. 589, 71 L. ed. 1323, reversing International

Salt Co. v. Phillips (3 Cir.) 9 F. (2d) 389; and Harmar Coal Co. v. Heiner (3 Cir.) 34 F. (2d) 725, certiorari denied, 280 U. S. 610, 50 S. Ct. 159, 74 L. ed. 653.

■ .The general rule is that mere ownership by a foreign corporation of stock in a domestic corporation within a state, and even of a controlling interest therein, does not in itself necessarily constitute "doing business" within the state concerned. This rule is predicated upon the theory of the separate entity of the two corporations. Where such entity is preserved, the rule is adhered to in the absence of circumstances justifying the court in looking through the form to the substance of the relationship between the two corporations. McCoach v. Minehill & S. H. R. Co. 228 U. S. 295, 33 S. Ct. 419, 57 L. ed. 842; United States v. Nipissing Mines Co. (2 Cir.) 206 F. 431, writ dismissed on motion, 234 U. S. 765, 34 S. Ct. 673, 58 L. ed. 1582; United States v. Emery, Bird, Thayer Realty Co. 237 U. S. 28, 35 S. Ct. 499, 59 L. ed. 825; Butterick Co. v. United States (D. C.) 240 F. 539, writ dismissed on motion, United States v. Butterick Co. 248 U. S. 587, 39 S. Ct. 5, 63 L. ed. 434; Continental Baking Corp. v. Higgins (2 Cir.) 130 F. (2d) 164; Automatic Fire Alarm Co. v. Bowers (D. C.) 51 F. (2d) 118; Rose v. Nunnally Inv. Co. (5 Cir.) 22 F. (2d) 102, certiorari denied, 276 U. S. 628, 48 S. Ct. 321, 72 L. ed. 739; Eaton v. Phoenix Sec. Co. (2 Cir.) 22 F. (2d) 497; United States v. Three Forks Coal Co. (3 Cir.) 13 F. (2d) 631; State ex rel. State Corporation Comm. v. Old Abe Co. 43 N. M. 367, 94 P. (2d) 105; People ex rel. Manila E. R. & L. Corp. v. Knapp, 229 N. Y. 502, 128 N. E. 892; People ex rel. Butterick Co. v. Gilchrist, 213 App. Div. 533, 211 N. Y. S. 75, affirmed, per curiam, 241 N. Y. 591, 150 N. E. 567; Welch Holding Co. v. Galloway, 161 Or. 515, 89 P. (2d) 559.

■ A large number of courts, however, have held that where a foreign corporation is organized for the purpose of holding the controlling stock in a local corporation and directing its management through the voting power of the stock thus held, or where in addition to such ownership there exist circumstances which render the local corporation merely the agent of the holding corporation and

458

the latter is present and acting in the state through its officers, it may be held to be "doing business" within the state. Hastings Pavement Co. v. Hoey (D. C.) 28 F. Supp. 897; see, Cheney Brothers Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. ed. 632; Commonwealth v. Wilkes-Barre & H. R. Co. 251 Pa. 6, 95 A. 915; Commonwealth v. American Gas Co. 352 Pa. 113, 42 A. (2d) 161; Bankers Holding Corp. v. Maybury, 161 Wash. 681, 297 P. 740, 75 A. L. R. 1237. In such cases, the holding corporation is held to have acquired a *commercial domicile* within the state based upon the described activity, rendering it subject to local taxation. The foregoing rule is expressed in Cheney Brothers Co. v. Massachusetts, 246 U. S. 155, 38 S. Ct. 297, 62 L. ed. 637, as follows:

"This is a Michigan corporation whose articles of association contemplate that it shall have an office in Boston. It is a holding company and owns various corporate stocks and bonds and certain mineral lands in Michigan. Its activities in Massachusetts consist in holding stockholders' and directors' meetings, keeping corporate records and financial books of account, receiving monthly dividends from its holdings of stock, depositing the money in Boston banks and paying the same out, less salaries and expenses, as dividends to its stockholders three or four times a year. The exaction of a tax for the exercise of such corporate faculties is within the power of the State. Interstate commerce is not affected."

This rule is otherwise expressed by the United States Supreme Court in Edwards v. Chile Copper Co. 270 U. S. 455, 46 S. Ct. 346, 70 L. ed. 682:

"* * * It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities * * * do not amount to doing business * * *. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit."

In other words, if the activities of such a holding company involve more than mere passive holding of the stock and distribution of dividends therefrom, ordinarily it is held that such a corporation is "doing business" and hence subject to local taxation.

■ An examination of the record here indicates substantial support for the finding of the commissioner and the board of tax appeals that the activities of *Mutual* in Minnesota during the year 1941 constituted much more than mere passive holding of *Tribune* stock.

While *Mutual* was organized in Delaware, its corporate powers permitted it to operate anywhere both within and without such state. It was organized as a business corporation for profit, and the principal purpose of its organization was to control the directorships and offices of *Tribune* to the exclusion of other stockholders. After its organization, it immediately proceeded to carry out such purposes. It elected the officers of *Tribune* and placed its own directors in control of the board of directors of *Tribune*. All of its activities and meetings were held within Minnesota. It had no offices or records elsewhere. It conducted no business and engaged in no enterprises or transactions in any other state. Its only offices were maintained in Minnesota, where its meetings were held, its correspondence received, and its clerical work performed.

Such activities appear to have given it a commercial domicile within Minnesota during the year 1941. They bring it clearly within the rule expressed in First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 236, 57 S. Ct. 677, 678, 81 L. ed. 1061, 1063, 113 A. L. R. 228, wherein the United States Supreme Court stated:

"Appellant is qualified to do business in Minnesota, and in fact transacts its corporate business and fiscal affairs there. It maintains a business office within the state and holds there its meetings of stockholders, directors and their executive committee. It is the owner of a controlling interest in the stock of a large number of banks, trust companies and other financial institutions, located in the Ninth Federal Reserve District. The stock certificates are

kept in Minnesota, where appellant receives dividends declared by its subsidiaries, and where it declares and disburses dividends upon its own stock.

"Through a wholly-owned *subsidiary* corporation, organized and doing business in Minnesota, it maintains a compensated service for the banks which it controls. * * * Appellant thus maintains within the state an integrated business of protecting its investments in bank shares, and enhancing their value, by the active exercise of its power of control through stock ownership of its subsidiary banks.

"'* * * But it is plain that the business which appellant carries on in Minnesota, or directs from its offices maintained there, is sufficiently identified with Minnesota to establish a 'commercial domicile' there, and to give a business situs there, for purposes of taxation, to intangibles which are used in the business or are incidental to it, and have thus 'become integral parts of some local business.'" (Italics supplied.)

See, also, State v. First Bank Stock Corp. 197 Minn. 544, 267 N. W. 519, 269 N. W. 37; The Canisteo Corp. v. Spaeth, 211 Minn. 185, 300 N. W. 596; Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728.

Under the facts recited and based upon the foregoing decisions, we must hold that the evidence reasonably sustains the finding of the board of tax appeals that the activities of *Mutual* in Minnesota in 1941 constituted "doing business" so as to give it a commercial domicile here. It follows that the income which it received from *Tribune's* stock that year was assignable to Minnesota under § 290.17 as income from intangibles employed in its business here and having a business situs within the state.

Relator asserts that this court's decision in Marshall-Wells Co. v. Commr. of Taxation, 220 Minn. 458, 20 N. W. (2d) 92, constitutes authority for holding that such income cannot be assigned to Minnesota. We do not agree. In the Marshall-Wells case it was conceded that relator had acquired a commercial domicile here.

The only question presented there was whether income from intangibles consisting of *stock in Canadian corporations which had no business situs in Minnesota and which did not form an integral part of the corporation's Minnesota business and were not used in connection therewith* were assignable to Minnesota. Therein we set forth the rule that where a foreign corporation is commercially domiciled within this state income from intangibles owned by it are not assignable to this state where such intangibles have no business situs and are unrelated to the business which the corporation conducts within this state.

The Marshall-Wells case is clearly distinguishable. Here, the intangibles owned by *Mutual,* which was commercially domiciled in Minnesota, had a business situs here. They formed an integral part of and were directly related to the principal business for which *Mutual* had been organized and which it conducted exclusively within this state. In consequence, income therefrom was properly assigned to this state in computing the tax involved.

Affirmed.

---

[1]Reported in 37 N. W. (2d) 744.