# GREAT LAKES PIPE LINE COMPANY v. COMMISSIONER OF TAXATION.*

138 N. W. (2d) 612.

November 12, 1965—No. 39,781.

---

\* Certified to U. S. Supreme Court February 28, 1966.

*Robert W. Mattson,* Attorney General, and *Ralph W. Peterson,* Special Assistant Attorney General, for relator.

*Faegre & Benson, Hayner N. Larson, Erwin Mitch Goldstein, Leon B. Seck,* and *John W. Dunn,* for respondent.

NELSON, JUSTICE.

Certiorari on the relation of the commissioner of taxation to review a decision of the Board of Tax Appeals. Five orders issued by the commissioner imposing additional income taxes for the years 1955 through 1959 were appealed to the board by the respondent taxpayer, Great Lakes Pipe Line Company, and there consolidated for trial and decision since the issues arising out of the orders were the same. The board reversed all of the orders.

Respondent is a Delaware corporation with its general and supervisory offices located in Kansas City, Missouri. It is engaged as a common carrier for hire in the sole business of transporting refined petroleum products by pipeline. During the period in question it operated both within and without Minnesota, its pipeline system extending into a nine-state area comprised of the States of Illinois, Iowa, Kansas, Missouri, Nebraska, North Dakota, Oklahoma, South Dakota, and Minnesota. In 1957 it also extended its system into Wisconsin.

Respondent has been authorized to do business in Minnesota since 1953, paying a franchise tax pursuant to Minn. St. 290.02. The company does not engage in any marketing activity within the state nor does it maintain any manufacturing facilities here. It does, however, own and maintain the pipeline extending into Minnesota as well as its terminal storage facilities connected therewith, in which petroleum is stored until the company is notified by the shipper where a final delivery of petroleum from the Minnesota storage facilities is to be made. All maintenance services performed on the pipeline and terminal facilities located within the State of Minnesota are performed here by respondent's employees. All contracts and agreements for transportation services through respondent's pipelines are negotiated end executed at the offices in Kansas City, in accordance with tariffs filed with and approved by the Interstate Commerce Commission.

It appears from the record that there are periods of time between maturity dates of major company obligations when the income from the company's pipeline business accumulates and temporarily becomes excess funds. These funds are transferred from the company's Kansas City banks to a bank in New York to be there utilized as investment funds. The securities generally purchased with these funds consist of short-term government obligations—several million dollars worth during the time in question—and prime commercial paper issued by unrelated obligors. The monies transferred by respondent into the account with the New York bank constitute income derived from the operations of the pipeline transportation business, the securities being purchased by the bank as respondent's agent upon telephoned instructions from its financial officers in Kansas City. As these securities mature and are redeemed, the proceeds are redeposited in the New York bank, as is the income from the securities. As income taxes, debenture indebtedness, and other of its various business obligations become due, respondent transfers these funds from the New York bank account to its banks in Kansas City for use in discharging the obligations. It is clear that the company's purpose in buying the various short-term securities is to keep the money earned through its pipeline transportation business producing income, and the record is clear that the securities in question have always appeared on the

balance sheet and financial statements of the company as current assets. It is undisputed that all of the intangibles owned by respondent are short-term, the respondent forecasting its various cash needs by computer and making investments accordingly, always attempting to time maturity dates of the securities with forthcoming business obligations.

Respondent timely filed its Minnesota income tax returns for the years 1955 through 1959 in accordance with the provisions of Minn. St. c. 290. The return for the year 1955 disclosed a total tax of $51,311.85 due on the income reported, which amount respondent paid. This amount was computed through the use of the three-factor formula composed of tangible property, payroll, and barrel-mile factors applied to respondent's net earnings solely from its petroleum transportation business. The commissioner of taxation, after duly auditing the foregoing return, determined that the audit disclosed a deficiency of $2,125.72 plus interest in the amount of $596.94, resulting in a total deficiency of $2,722.66, for which the commissioner made an additional assessment against respondent on March 22, 1963. The additional assessment of $2,125.72 resulted from treating the interest from and gains on the government securities and commercial paper held by respondent as income subject to apportionment under § 290.19. Similar additional assessments were ordered for the other years in question.

The issues before this court are whether, under the facts appearing of record, the intangibles owned by respondent were employed in its business within the meaning of § 290.17(4) so as to require the income therefrom to be included in income apportionable to the State of Minnesota under § 290.19, and whether § 290.17(4) so construed violates U. S. Const. Amend. XIV and Minn. Const. art. 1, § 7. Section 290.17 (4) provides in part as follows:

"When a trade or business is carried on partly within and partly without this state, the entire income derived from such trade or business, *including income from intangible property employed in such business* and including, in the case of a business owned by natural persons, the income imputable to the owner for his services and the use of his property therein, shall be governed, except as otherwise provided in sections 290.35 and

290.36 by the provisions of 290.19, notwithstanding any provisions of this section to the contrary." (Italics supplied.)

In In re Petition of S. R. A. Inc. 213 Minn. 487, 488, 7 N. W. (2d) 484, 485, this court said:

"Taxes are pecuniary charges imposed by the legislative power to raise money for public purposes—a burden imposed to supply the very lifeblood of the state."

Taxes on corporations doing business within this state are imposed for that privilege and for the protection the state affords to them, and taxpayers are required to keep in mind the established policy contained in the foregoing statement. This court is also required to keep this policy in mind in reviewing decisions made by the Board of Tax Appeals.

Respondent contends that taxation of the income derived from its intangibles is violative of the due process clause of both the United States Constitution and of Minn. Const. art. 1, § 7. It contends that the business of creating such income is not carried on within this state at all and that Minnesota is therefore prohibited from taxing the income therefrom.

The United States Supreme Court has discussed the constitutional requirements in Butler Brothers v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991. In the Butler Brothers case an Illinois corporation was qualified to engage in business within the State of California. The corporation purchased wholesale dry goods and general merchandise in quantity from manufacturers and in turn resold the goods to retailers at a profit. One wholesale distributing house was located in California. The corporation's own computation of income allocated to California resulted in a loss. The tax commissioner of California, however, allocated a percentage of the corporation's total profit from its total operations by using a formula determined by averaging percentages which (a) value of real and tangible personal property, (b) wages, salaries, commissions and other compensation to employees, and (c) gross sales attributable to the California wholesale distributing house bore to the corresponding items of all houses of the corporation. The court held that in the application of a state statute imposing on corporations doing business within and without the state a franchise tax measured by a percentage of the net

income derived from business within that state, a formula which is "fairly calculated" to allocate to the state that portion of the net income "reasonably attributable" to the business done there satisfies the requirements of the Fourteenth Amendment. 315 U. S. 506, 62 S. Ct. 704, 86 L. ed. 995.

The three-factor formula found in § 290.19, subd. 1(2)(a), is based on factors similar to those used in California. While the formula used in Minnesota is not exactly the same, it appears to be as fair and adequate as the California one. If applied properly, the income the Minnesota formula reaches will be as "reasonably attributable" to Minnesota as the income of the taxpayer was to California in the Butler Brothers case. The use of the Minnesota formula has been held to be in accord with constitutional principles by this court in Walgreen Co. v. Commr. of Taxation, 258 Minn. 522, 104 N. W. (2d) 714, appeal dismissed, 365 U. S. 767, 81 S. Ct. 912, 6 L. ed. (2d) 189. We also said in the Walgreen case (258 Minn. 530, 104 N. W. [2d] 719):

"That application of the 3-factor formula may result in some overlapping of measures of net income as between states is not fatal to the honest efforts of a state to determine what would be a fair approximation of the income of a multistate unitary business."

The Board of Tax Appeals found that respondent's sole business in Minnesota was the transportation of refined petroleum products by pipeline and that there was no connection between respondent's operations in Minnesota and its investment activities and the income gained from such activities. These findings raise the basic question of whether respondent is upon the record herein, engaged in a unitary business under the statutes of this state.

We have considered the nature of a taxpayer's multistate business operations several times. We made it clear in Western Auto Supply Co. v. Commr. of Taxation, 245 Minn. 346, 71 N. W. (2d) 797, that whether a number of business operations having common ownership constitute a single or unitary business or several separate businesses for tax purposes depends upon whether they are of mutual benefit to one another and on whether each operation is dependent on or contributory to others. There, we found the business unitary.

In Skelly Oil Co. v. Commr. of Taxation, 269 Minn. 351, 131 N. W. (2d) 632, the taxpayer was a foreign corporation engaged in the production business wholly outside Minnesota and in the marketing business outside and within the state. The production and marketing operations were functionally and completely separate and distinct from each other, the responsibility for such operations being borne by completely independent and separate departments. The Board of Tax Appeals found that the company was engaged in two separate businesses, but that they were integrated to some extent for tax purposes and that some income from the production business was apportionable to Minnesota. In view of the finding that all income from production was earned from operations completely independent of any carried on by the marketing department, this court reversed, holding that (269 Minn. 372, 131 N. W. [2d] 646)—

"* * * [the state] may not include any production-operations income if it does not appear that the included portion is fairly attributable to the marketing operations reaching into this state."

The most recent decision this court has rendered on what constitutes a unitary business is Maurice L. Rothschild & Co. v. Commr. of Taxation, 270 Minn. 245, 133 N. W. (2d) 524. The taxpayer in that case operated three retail stores in Chicago and three in the Minneapolis-St. Paul area. The Board of Tax Appeals found that for tax purposes there was sufficient integration to treat the business as a unitary one, citing such factors as general management consultations, interstore movement of goods, and price concessions due to volume purchases as indicative of a single business. We affirmed, applying the tests enunciated in Western Auto Supply Co. v. Commr. of Taxation, *supra,* and holding the taxpayer's business operations constituted a unitary business under the rule that a multistate business is a unitary business when the operations conducted in one state benefit and are in turn benefited by the operations in another state.

The facts in the instant case show that respondent's investment practices and its pipeline activities have been, throughout the period here involved, of mutual benefit to one another. The testimony of respondent's own witness was that the pipeline activities produce the income which purchases the intangibles and that sooner or later the increase, gain, and

principal of these intangibles is used entirely to pay various expenses and obligations of the pipeline activities. There are no indications from the testimony submitted that separate businesses exist. In fact, Mr. J. T. Robb, manager of respondent's financial division and a former treasurer and controller of the company, testified that he and the company treasurer decided upon and handled the purchase of its short-term securities and that the income and proceeds from sales of such securities were deposited in respondent's New York bank account without attempting to keep them separate from other items deposited in the account. Another fact indicative that respondent's business was unitary is the showing of these securities on respondent's financial statement at all times as current assets. Even though respondent may argue that this fact is of little significance, it can be said without fear of contradiction that the credit standing of the company was definitely improved when its balance sheet showed securities worth nearly $11,000,000. Since there exists no departmentalization for the conduct of the pipeline operations and of the investment program, and there are no financial officers responsible solely for securities investment, the case is unlike Skelly Oil Co. v. Commr. of Taxation, *supra,* and the only justifiable conclusion is that respondent is conducting one business only, single and unitary in scope.

In oral argument respondent relied to some extent on two cases, Marshall-Wells Co. v. Commr. of Taxation, 220 Minn. 458, 20 N. W. (2d) 92, and Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728, as authority for its position that the commissioner's interpretation of Minn. St. c. 290, and specifically §§ 290.02, 290.17(4), and 290.19, as applied to its short-term securities, deprived it of its property without due process of law. An analysis of the Marshall-Wells and Cargill cases discloses that in each the taxpayers had established a commercial domicile in the State of Minnesota, a factor entirely absent in the instant case. It discloses also that these cases recognize that a state's taxing power may reach income from intangibles located outside the state but correlated to a business conducted within the state. In the Marshall-Wells case, this court said (220 Minn. 462, 20 N. W. [2d] 94):

"Generally speaking, a state may tax any privilege extended by it and may adopt any reasonable rule for the measurement of such tax, *pro-*

*vided it is not measured by property, or income from property, not within its jurisdiction and not used in connection with or correlated to any business authorized or conducted in the state.* An attempt by the state to exercise its taxing authority upon property located and used *beyond* its jurisdiction constitutes a taking without due process of law. [Citations omitted.]"

We cannot, upon the record in this case, agree with respondent's contention that its payment of income taxes, interest, dividends, and other obligations of the company from the income earned on its investments does not constitute employing such investments in its business as a single enterprise under the taxing statutes of this state.

In Wayne Pump Co. v. Commr. of Taxation, Minn. B. T. A., Docket No. 222, May 13, 1946, a Maryland corporation engaged in manufacturing in the State of Indiana and qualified to do business in the State of Minnesota, perfected and manufactured a computer device to register quantity as well as cost of gasoline. The company licensed the use of the device to other companies. The issue before the Board of Tax Appeals was whether the patent which created the royalty income there in dispute was "employed" in the taxpayer's business for tax purposes. The board held:

"* * * Profit is the generative spark of Taxpayer's, as it is of all private business enterprise. It can hardly be said that an intangible used in support of the price structure, upon which the corporate profit depends is not 'employed in the business'."

Minn. St. 290.17(4) was construed by the Board of Tax Appeals in Swift & Co. v. Commr. of Taxation, Minn. B.T.A., Docket No. 622, Feb. 26, 1957. The board said in its opinion there:

"The sole issue here presented for determination is whether interest income received by the Taxpayer in 1951 on federal and state income tax refunds is apportionable income received from intangible property employed in Taxpayer's business."

Citing § 290.17(4) as controlling, the board continued:

"The words, 'income from intangible property employed in such business' as used in Section 290.17 Subd. 4, have previously been given a

liberal interpretation by the Minnesota Board of Tax Appeals and the Supreme Court so as to include income *integrated with or used* in such business [citing Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728], or *used in connection with* or *correlated to* such business [citing Marshall-Wells Co. v. Commr. of Taxation, 220 Minn. 458, 20 N. W. (2d) 92], or * * * *an integral part of* or *related to* such business [citing Minnesota Tribune Co. v. Commr. of Taxation, 228 Minn. 452, 37 N. W. (2d) 737]." (Italics supplied.)

The foregoing definitions of what constitutes "employment" of intangibles in a business cannot be overlooked. The taxpayer in the instant case derives profit from its investment practices and then uses that profit to pay its expenses and business obligations. This use clearly constitutes employment of income from intangibles in respondent's business operations.

Since the securities involved in the instant case are "related to," "form an integral part of," are "correlated to," and "used in connection with" respondent's pipeline business, a unitary one, operated within and without Minnesota, we conclude that the record amply establishes that respondent employed these intangibles in its pipeline business.

In reviewing an order of an administrative board, this court will go no further than to determine (1) whether the board kept within its jurisdiction; (2) whether the board proceeded on a correct theory of the law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. Oliver Iron Min. Co. v. Commr. of Taxation, 247 Minn. 6, 76 N. W. (2d) 107; Red Owl Stores, Inc. v. Commr. of Taxation, 264 Minn. 1, 117 N. W. (2d) 401; Minn. St. 271.10, subd. 1.

Applying the foregoing rule to the facts in the instant case, we are left no alternative but to reverse the decision of the board. We find no evidence which reasonably supports respondent's contention that the investment income is not fairly attributable to Minnesota under § 290.17(4). We recognize the rule that if the directions of a statutory provision are unclear, the interpretation should favor the taxpayer; but the factual record here will not support a finding in respondent's favor.

The issue of double taxation has also been raised by respondent. This court in State v. Northwest Airlines, Inc. 213 Minn. 395, 407, 7 N. W. (2d) 691, 697, affirmed, 322 U. S. 292, 64 S. Ct. 950, 88 L. ed. 1283, 153 A. L. R. 245, rehearing denied, 323 U. S. 809, 65 S. Ct. 26, 89 L. ed. 645, rejected a similar argument and said:

"* * * The *possibility* of taxation of the same property by more than one state is no longer a constitutional objection." (Italics supplied.)

See, Northwestern States Portland Cement Co. v. Minnesota, 358 U. S. 450, 462, 79 S. Ct. 357, 364, 3 L. ed. (2d) 421, 429.

Respondent is not entitled to exclusion of its income earned on intangibles consisting of short-term securities purchased with proceeds derived from its pipeline operations and used in its pipeline business. The commissioner of taxation properly determined such income to be taxable under §§ 290.17(4) and 290.19.

Reversed.